**Philip KRUPP and W.P.F., Inc.**

**v.**

**FEDERAL HOUSING ADMINISTRA-TION and Norman P. Mason, Federal Housing Commissioner.**

**Civ. A. No. 58-760-F.**

United States District Court
D. Massachusetts.

July 18, 1960.

Anthony Brayton, Hale & Dorr, Boston, Mass., George H. Foley, Boston, Mass., for plaintiff.

Elliot L. Richardson, U. S. Atty., Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an action for misrepresentation or breach of warranty in connection with the sale of certain real estate by defendants to plaintiffs.

About June 1, 1957, the Federal Housing Administration advertised for sale a garden type apartment project called Gateway Apartments located in Springfield, Massachusetts. The prospectus issued by defendant contained information as to the number of units and garages, rental rates, percentage of occupancy and expenses. In particular it stated that the property included 100 garages.

The face side of the prospectus contained the following:

"Bids are by separate contract executed by the bidder for each property, binding upon acceptance, containing the sales agreement, briefed as follows: * * * 9. Acceptance of the property in its present condi-

tion, and subject to existing leases and tenancies."

The reverse side of the prospectus contained the following statement:

*"The purchaser will be expected to accept the property in its present condition without warranty by FHA as to physical condition * * *. Information provided herein is all to be made available by FHA and is furnished without responsibility on the part of FHA. Those interested are expected to acquaint themselves with the property and to develop their own expectations as to rental income, operating expenses, etc. The Managing Agent will make the property available for inspection on approval of a written request to be obtained by those interested * * "* (Emphasis added.)

Plaintiff Krupp was the highest bidder with a bid of $1,336,180.54 and entered into a contract of purchase and sale with the Federal Housing Commissioner. This contract contained the following provisions:

"10. No representations are made by the Seller as to the physical condition of the property to be conveyed and the Purchaser agrees to accept the same in its present condition and subject to existing leases and tenancies. *See item 19.*

\* \* \* \* \* \*

"19. Notwithstanding agreement by the Purchaser (Item 10) to accept the property in its present condition, the Seller will complete at the expense of the Seller all repairs, improvements and the like for which the Seller has previously contracted, such as erosion control work, installation of venetian blinds, screens and screen doors, mail drops, walks, retaining wall, etc."

The contract referred to the prospectus, a copy of which was attached to the contract. In accordance with the terms of this contract Krupp formed the plaintiff corporation and the property was

conveyed to it by quitclaim deed in October of 1957.

Plaintiffs allege, and defendants for the purposes of this motion conceded, that the garaging accommodations of the apartment project consisted of car ports which as a practical matter afforded rentable parking space for only 50 automobiles.

The basis for the motion for summary judgment is that in view of the previously quoted provisions of the prospectus and contract there were, as a matter of law, no warranties or representations for which the defendants could be held liable. If this contention is correct, the various factual matters as to which plaintiffs say the parties are not agreed become immaterial and the motion for summary judgment should be granted.

■ It is clear from the cases that the government and its agencies in the disposal of excess property are not to be placed on the same footing as the ordinary commercial vendor. Where the governmental agency disposing of such property makes it clear that it is making the sale only on the basis that it makes no warranty or representation as to the property, that the property is being sold on an "as is" basis, and that the purchaser is to take the property at his own risk, with due opportunity for inspection being afforded him, such a contract is to be strictly interpreted in favor of the government. The purchaser who relies on information furnished him by the government under those conditions and fails to inspect or does not fully inspect does so at his own risk. And even if he makes a bad bargain because of defects in the property which even a reasonably careful inspection would not disclose, the risk of loss still falls on him. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 383, 385, 68 S.Ct. 1, 92 L.Ed. 10; Maguire & Company v. United States, 273 U.S. 67, 47 S.Ct. 274, 71 L.Ed. 540; Lipshitz & Cohen v. United States, 269 U.S. 90, 46 S. Ct. 45, 70 L.Ed. 175; Shappirio v. Goldberg, 192 U.S. 232, 241, 242, 24 S.Ct. 259, 48 L.Ed. 419; United States v.

Hathaway, 9 Cir., 242 F.2d 897; United States v. Weisbrod, 7 Cir., 202 F.2d 629, 633; United States v. Silverton, 1 Cir., 200 F.2d 824.

■ Plaintiffs contend that the rule of these cases should not apply in the case of the FHA because it is actually engaged in real estate transactions on a large scale and its agents possess an expert knowledge of property of the type involved here. It is true that in many cases involving disposal of surplus property, the courts have relied in part on the fact that the government did not possess the same expert knowledge of the property and the market involved as did the buyer. But this is not the fundamental reason for the rule of the cases above cited. As pointed out in Federal Crop Insurance Corp. v. Merrill, supra, the basic reason is that the government, even when it engaged through one of its agencies in business of the type ordinarily conducted by private enterprise, is still not to be treated as a private litigant, and is entitled to a strict construction in its favor of conditions imposed to protect the public treasury.

Plaintiffs further argue that the provisions of the prospectus and contract set forth above do not protect defendant in this case. The prospectus states that the purchaser is to take the property "in its present condition without warranty by FHA as to physical condition," and Clause 10 of the contract provides that "No representations are made by the seller as to the physical condition of the property to be conveyed. * * *" Plaintiffs argue that "physical condition" refers only to the state of repair or disrepair and that the disclaimer as to warranties or representations must be limited to statements about the physical condition in this sense. In support of this view they point to the reference at the end of Clause 10 to Clause 19. Clause 19, however, does not throw any light on the meaning of the words "physical condition" as used in Clause 10. It is clearly concerned only with a clarification of the words "present condition" which is made to mean not the actual

condition at the time of the contract, but the condition as changed by work already contracted for by the seller which the seller undertook to carry out. And it is to be noted that the language of Clause 10 is not limited to repairs but also includes improvements of the property which may have been provided for by existing contracts.

The extent of the government's disclaimer of warranty or representation must be judged in the light of all the relevant language of the contract and prospectus. The prospectus, in the language quoted above, makes it clear that the government was disclaiming responsibility on a broad scale. Any information furnished in the prospectus, including the statement as to the number of garages, was expressly furnished without any assumption of responsibility for its correctness. It is clear that the buyer was expected to develop his own estimate of the value of the property based on his own inspection. If he relied on the defendant's statements as to the number of garage accommodations, he did so at his own risk. Before he made his bid he was clearly forewarned by the prospectus that the sale was to be made on those terms and that the defendant did not make any statement of information as to the property with the expectation or intention that a prospective purchaser should rely on it or use it otherwise than at his own risk. Mottram v. United States, 271 U.S. 15, 46 S.Ct. 386, 70 L.Ed. 803.

Plaintiffs further argue that this is a case of the type referred to in United States v. Silverton, 1 Cir., 200 F.2d 824, at page 828 where there was such a discrepancy between what he contracted to buy and what he received that it cannot be said that the seller fulfilled its contract. They say that they contracted to buy 192 apartments and 100 garages and actually received 192 apartments and 50 garages. However, plaintiffs did not contract to buy 192 apartments and 100 garages as such. They agreed to buy a specific piece of real estate, the Gateway Apartments, as a single unit. This specific piece of property is exactly what was conveyed. They received the exact physical property they agreed to buy. If they were misled by their reliance on any statement of FHA as to the number of garage units it contained, this is the risk which they knew or should have known they were taking because the prospectus clearly warned them that the sale was being made in those terms.

Defendants' motion for summary judgment is allowed, and judgment will be entered for defendants dismissing the complaint.