594 F.2d 177
 DSI CORP., a California Corporation, Sanford B. Weiss,
Woodland Development Company, a Joint Venture, and
Terra Linda Meadows, a Partnership,
Plaintiffs- Appellants,
v.
SECRETARY OF HOUSING AND URBAN DEVELOPMENT (of the United
States of America), Defendant-Appellee.
 No. 75-2605.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 19, 1979.
Rehearing Denied April 16, 1979.
 
 John A. Drummond (argued), James J. Feder, Los Angeles, Cal., William A. Dougherty, of Dougherty, Elekes & Carroll, Tustin, Cal., for plaintiffs-appellants.
 Michael Kimmel (argued), Dept. of Justice, Washington, D. C., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before HUFSTEDLER and SNEED, Circuit Judges, and PALMIERI,* District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Appellants brought this action against the Secretary of Housing and Urban Development (hereinafter the "Secretary") in the United States District Court for the Northern District of California (Peckham, J.) on August 6, 1973. Appellants seek to recover money damages under six causes of action arising out of the Secretary's alleged mishandling of their federally insured housing projects. Jurisdiction is claimed solely on the basis of 12 U.S.C. § 1702, the provision of the National Housing Act that permits the Secretary to "sue and be sued."
 
 
 2
 The district court granted summary judgment in favor of appellee on causes of action one and three through six and dismissed without prejudice cause of action two. The court grounded its actions on several bases. First, the court held that to the extent that the action sounded in contract, it had no jurisdiction under § 1702 because recovery from the public treasury of over $10,000 may not be had in a district court. 28 U.S.C. § 1346(a)(2). Second, the court ruled that § 1702 did not confer jurisdiction over tort causes because of the exclusive remedy provided by the Federal Tort Claims Act. See 28 U.S.C. §§ 1346(b), 2679(a). In addition, the court found that even if brought under the Federal Tort Claims Act, the action would be barred by the "discretionary function" exception, 28 U.S.C. § 2680(a). Finally, the court concluded that appellee was entitled to judgment as a matter of law based upon the undisputed facts and the written agreements between the parties.
 
 
 3
 Appellants ask this court to reverse the district court's grant of summary judgment and dismissal and remand the case to that tribunal for further proceedings. This we decline to do. Our jurisdiction to hear this appeal rests on 28 U.S.C. § 1291.
 
 I.
 
 4
 The factual background of this litigation developed as follows. In March of 1966 the Secretary, pursuant to Section 231 of the National Housing Act, 12 U.S.C. § 1715v, made a commitment to insure a $6,400,300 loan from the Fidelity Bank of Beverly Hills, California, to appellant Woodland Development Company (a joint venture made up of appellant Sanford B. Weiss and O. D. C. Parklane, Inc.). The loan was used to purchase The Park Lane, a 262-unit housing complex for the elderly located in Monterey, California.
 
 
 5
 The Secretary set two conditions for the commitment of insurance. To begin with, Woodland was required, and agreed, to deposit in escrow $243,926 by December 1, 1967. Woodland further agreed to execute a regulatory agreement with the Federal Housing Commissioner. This step was accomplished on March 22, 1966.
 
 
 6
 According to appellants' complaint, on December 19, 1967, Woodland borrowed $190,000 from Project Management Company. Project Management Co. was the managing organization for The Park Lane and was owned by appellant DSI Corporation, which was, and is, owned by appellant Sanford Weiss. As security for the loan, Woodland executed in favor of Project Management Co. a chattel mortgage covering certain personal property located on the premises of The Park Lane. Woodland also alleges that on that date it executed another chattel mortgage on the same property in favor of Fidelity Bank. The Fidelity mortgage was said to have been additional security for the bank's $6,400,300 loan and subject to a prior lien in favor of Project Management Co.
 
 
 7
 As of July 1, 1968, appellant Weiss, formerly the principal joint venturer of Woodland, became the sole proprietor of The Park Lane. Beginning in July, Woodland defaulted on the mortgage payments due to Fidelity Bank. Pursuant to the insurance agreement, Fidelity assigned the $6,400,300 note and mortgage to the Secretary on October 28, 1968 and received full payment of the amount outstanding. Two months later, Fidelity followed this assignment with an assignment of the chattel mortgage it held.
 
 
 8
 Foreclosure proceedings were instituted by the Government on April 29, 1969. In United States v. Woodland Development Co., No. C-51248 (N.D.Cal., April 29, 1969), the court granted the Government possession of The Park Lane and all property on the premises. The Government assumed management of the property as mortgagee-in-possession and has applied all net income to the note assigned by Fidelity Bank. A final disposition of the Woodland foreclosure action has not yet been reached.
 
 
 9
 Appellants' purported causes of action arise in large part from the Government's actions in and as a result of Woodland. Appellants first contend that the value of the $190,000 note allegedly given by Woodland to Project Management Co. has been reduced to zero by the Government's allegations in Woodland. Appellants seek damages of $290,000 (the sum of the note plus accrued interest). Appellants follow their first claim with one based upon appellee's alleged mismanagement of The Park Lane while in possession. The recovery sought under this heading is $2,500,000, appellants' alleged equity in the project.
 
 
 10
 Appellants' third cause of action contains three parts. The complaining parties charge that the Secretary authorized inadequate reimbursement for cash deficits in violation of the escrow agreement, unreasonably refused to include additional construction costs in the insured mortgage loan, and refused to negotiate or cooperate with Woodland in its attempt to preserve or sell its equity in The Park Lane. The claimed detriment is, as in cause two, the loss of the appellants' alleged equity of $2,500,000.
 
 
 11
 The fourth and sixth causes of action asserted by appellants relate to other projects in which they have held interests. Cause of action four seeks recovery for the refusal of the Secretary, allegedly in violation of an agreement, to process applications for other mortgage loan insurance during the period 1968-70. Damages are claimed at $2,500,000 for The Park Lane and $4,300,000 for other interests. The sixth cause alleges that the Secretary, contrary to agreement, refused to permit rental increases at a project owned by The Pines (in which appellant DSI Corp. held an interest).
 
 
 12
 Cause of action five arises from property owned by appellant Terra Linda Meadows. Appellants maintain that the Secretary, again in violation of an agreement, unreasonably refused to allow Terra Linda Meadows to withdraw funds from its reserve, renegotiate its mortgage, or obtain a release from its Escrow Deposit Agreement. Damages for decreased value of equity are claimed at $500,000.
 
 II.
 
 13
 The threshold question in the instant appeal is one of jurisdiction; for if we determine that the district court was correct in ruling that it lacked jurisdiction, it will be unnecessary for us to reach the merits of appellants' causes of action. As noted above, appellants' sole basis for asserting that their action is jurisdictionally proper is the "sue and be sued" clause of the National Housing Act, 12 U.S.C. § 1702.
 
 
 14
 The causes pressed by appellants sound in both tort and contract. For reasons which will become apparent, before analyzing either aspect of the causes we must make the determination of whether this suit is against the Secretary or against the United States. Two decisions of the Supreme Court, Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) and Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), have established the rule that where recovery has to be made from the treasury, a suit is actually against the United States. If recovery may be had from separate funds within the possession and control of the Department of Housing and Urban Development, then this suit is in fact against the Secretary. See Federal Housing Administration, Region 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940).
 
 
 15
 Appellants contend that funds exist within the possession and control of the Department of Housing and Urban Development from which they can collect damages without diminishing the treasury. Appellants direct our attention to the Regulatory Agreement executed with the Federal Housing Commissioner. Any separate funds which were available under this agreement ceased to exist when the Secretary took assignment of the mortgage on October 28, 1968. See Marcus Garvey Square, Inc. v. Winston Burnett Construction Co., Inc., 595 F.2d 1126 (9th Cir. 1979). As a result, any potential recovery by appellants will have to come from the United States Treasury. For this reason, we must conclude that the present suit is actually against the United States.
 
 
 16
 Tort claims against the United States are exclusively cognizable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2679(a). Safeway Portland Employees' Federal Credit Union v. Federal Deposit Insurance Corp.,506 F.2d 1213 (9th Cir. 1974). In this case, even if appellants had alleged jurisdiction under the Act, their action would be barred by their failure to file an administrative claim as required by 28 U.S.C. § 2675. To the extent that the appellants' causes of action sound in tort, the district court was correct in ruling that it was not vested with jurisdiction to hear the claims.
 
 
 17
 Contract actions against the United States are governed by the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491. The Tucker Act includes both a waiver of sovereign immunity and a grant of jurisdiction. The grant of jurisdiction is, however, conditional. Suits seeking recovery of less than $10,000 may be brought in either the district courts or the Court of Claims but suits for over $10,000 may be entertained only by the Court of Claims. Because recovery of over $10,000 is being sought by appellants, to the extent that their actions are based upon contract, the district court was correct in ruling that it lacked jurisdiction.
 
 
 18
 Appellants have argued that the Tucker Act is not an exclusive grant of jurisdiction, but merely a conditional waiver of sovereign immunity. This court was presented with the same contention in Marcus Garvey Square, Inc. v. Winston Burnett Construction Co., Inc., supra. There, the court observed that "alternative sources of jurisdiction are relevant only if there is an alternative waiver of sovereign immunity." 595 F.2d at 1132. With regard to § 1702, the court stated that:
 
 
 19
 The general rule is that where the United States is the real party in interest, statutory authority for the federal official to be sued does not operate as a complete waiver of the sovereign immunity of the United States.
 
 
 20
 595 F.2d at 1132. (Citations omitted).
 
 III.
 
 21
 Because this suit is against the United States, the waiver of sovereign immunity contained in § 1702 does not apply. Since no other waiver appears to exist, we conclude that the district court was correct in holding that it was without jurisdiction to hear those causes of action predicated on the alleged violation of contractual rights.
 
 
 22
 The proper forum in which to bring an action of this sort is the Court of Claims. Under 28 U.S.C. § 1406(c), if a case within the exclusive jurisdiction of the Court of Claims is brought in the district court, that court may, in its discretion, transfer the case to the Court of Claims. Since the district court does not appear to have considered exercising this option, we remand for the limited purpose of allowing the district court to transfer this case to the Court of Claims should it find transfer warranted. We express no opinion as to whether transfer is appropriate under the present facts.
 
 
 23
 AFFIRMED and REMANDED FOR A LIMITED PURPOSE.
 
 
 
 *
 Hon. Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation