**ARMOR ELEVATOR CO., INC.**

v.

**PHOENIX URBAN CORPORATION
et al.**

**INTERCITY PAINTING COMPANY**

v.

**PHOENIX URBAN CORPORATION
et al.**

**FOUNDATION ENGINEERING
SYSTEMS, INC.**

v.

**PHOENIX URBAN CORPORATION
et al.**

**C & M ROOFING COMPANY, INC.**

v.

**PHOENIX URBAN CORPORATION
et al.**

**UNIVERSAL TESTING SERVICES, INC.**

v.

**PHOENIX URBAN CORPORATION
et al.**

**MANGANARO BROTHERS, INC.**

v.

**PHOENIX URBAN CORPORATION
et al.**

**GEOTECHNICAL CONSULTANTS, INC.**

v.

**PHOENIX URBAN CORPORATION
et al.**

**Civ. A. Nos. 77–1335–K, 77–2084–K and
78–1145–K to 78–1149–K.**

United States District Court,
D. Massachussetts.

June 30, 1980.

Joseph A. Pisarri, Corwin & Corwin, Boston, Mass., for plaintiffs.

Richard D. Glovsky, Asst. U. S. Atty., Boston, Mass., for Patricia Harris.

Geoffrey M. Peters, Boston, Mass., for Phoenix Urban, et al.

## MEMORANDUM AND ORDER

KEETON, District Judge.

By a Memorandum of March 4, 1980, the court indicated its tentative views regarding certain controlling jurisdictional issues in these actions. The Memorandum addressed some issues that had not been briefed by the parties. Entry of orders in accordance with the conclusions reached in the Memorandum was deferred, and a Case Management Conference was scheduled, in part to determine whether any party wished to file a request for rehearing or an additional brief on the issues addressed in the Memorandum. Rehearing was requested and allowed, and further briefs were filed.

After consideration of the briefs of the parties and the oral arguments advanced at hearing on June 11, 1980, the court is filing this revised Memorandum and Order.

### I.

The matter before the court is the motion to dismiss filed in these seven consolidated cases by the defendant Secretary of the

United States Department of Housing and Urban Development (HUD).

Each of the seven plaintiffs, one in each action, claims that defendant Phoenix Urban Corporation (Phoenix) was the general contractor for a project known as Charles River Park "D" and violated its subcontract with the plaintiff; that Phoenix was in fact the agent of a partnership, Charles River Park "D" Company (Charles River), and alternatively that Phoenix and Charles River are one and the same; and that partners of Charles River made material and misleading representations to the plaintiff and committed unfair and deceptive trade practices in violation of Mass.Gen.Laws c. 93A. In a separate count against HUD only, each of the complaints alleges that HUD insured the mortgage for the project and that HUD violated its regulations and guidelines in numerous respects and violated its "equitable" obligations to act responsibly for the protection of the subcontractors on the project, causing the plaintiff to sustain loss by reason of nonpayment for materials and services supplied under its subcontract and change orders. In this count each complaint prays for declaratory relief (e. g., in CA 78–1145–K, the prayer is that the court declare that plaintiff has an equitable lien on all sums which represented funds retained by the owner for payment to plaintiff on account of work done and materials furnished by plaintiff and only partly paid for; that HUD's wrongful misdirection of these retained funds is a nullity; and that HUD's insurance of all construction loan advances, made at any time an undissolved mechanic's lien existed on the project, was made without authorization and in violation of the National Housing Act, 12 U.S.C. § 1701 et seq., and is therefore a nullity) and for damages in the amount of the work and materials for which plaintiff has not been paid—in each case more than $10,000 —plus interest and costs.

One of these actions—No. 77–2084–K— was commenced in this court. HUD argues, not only as to this action but also as to the other six, which HUD removed to this court from the Superior Court of the Commonwealth of Massachusetts, that this court is without jurisdiction over the subject matter and (2) that each complaint fails to state a claim upon which relief can be granted because HUD owed no duty to the plaintiffs.

## II. The Removal

The petitions for removal vary somewhat. For example, in the first case filed, CA 77–1335–K, the petition refers to 28 U.S.C. §§ 1442(a) and 1446 and recites (¶ 4) that "the action has been commenced against the petitioner in her capacity as an officer of the United States Department of Housing and Urban Development for acts under the color of her office." In contrast, the petition in CA 78–1145–K recites (¶ 5) that the action is removed "pursuant to 28 U.S.C. §§ 1441(a), (b), and (c); 1442(a) and 1446 for the reason that this action has been commenced against the petitioner in her capacity as an officer of the United States Department of Housing and Urban Development for acts allegedly taken in violation of the National Housing Act and applicable regulations." Section 1442(a) provides for removal by "(1) Any officer of the United States or any agency thereof . . . [of an action commenced in a state court against the officer] for any act under color of such office or on account of any right, title, or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." Though the petition in CA 78–1145–K does not explicitly state that the claim is based on an "act under color of such office," a fair reading of the petition supports the conclusion that it so alleges at least by implication.

## III. The Burden-of-Pleading Argument

The Secretary's memorandum in support of the motion to dismiss appears to argue, at p. 13, that each plaintiff has an obligation, after removal, to file an amended complaint alleging a basis for federal jurisdiction since "[i]t is axiomatic that a plaintiff bears the burden to properly plead jurisdiction. 5 Wright and Miller, Fed. Pract. § 1206." The axiom, however, does not require a plaintiff who files an action in

state court to plead a basis for federal jurisdiction. Nor is the failure of the complaint filed in the state court to state a basis for federal jurisdiction a ground for dismissal after removal to federal court. If the petition for removal erroneously asserted federal jurisdiction and the complaint alleged a basis for jurisdiction in the state court, the appropriate order would be remand, not dismissal.[1] Even if the complaint failed to state a basis for jurisdiction in the state court over the claim against HUD, dismissal might be inappropriate.[2]

## IV. The Exclusive Jurisdiction Argument

HUD's second jurisdictional argument is grounded on the assertion that plaintiff's actions are in essence contract claims in excess of $10,000 each, as to which the United States Court of Claims has exclusive jurisdiction under 28 U.S.C. §§ 1346(a)(2) and 1491 (The Tucker Act).

Parts V and VI consider this argument, and Parts VII and VIII consider other issues that emerge as the exclusive jurisdiction argument is considered.

## V. Jurisdiction to Determine Jurisdiction

A threshold question is presented: Does this court have jurisdiction even to determine whether the claims asserted in the present actions are within or outside (1) its jurisdiction and (2) in the case of the six removed actions, the jurisdiction of the state court from which they were removed to this court?

■■■ A clear answer to the first of these two questions derives from the fact that federal courts are courts of limited jurisdiction. Inherent in the authoritative prescription of limited jurisdiction, whatever the source of the prescription may be

(constitutional, statutory, or decisional), is the necessity that the court of limited jurisdiction be empowered to turn away those litigants who seek to use its processes for the adjudication of claims beyond its limited jurisdiction.[3] Absent such jurisdiction to determine whether it has jurisdiction over a particular claim, the purpose of limiting the scope of its judicial activities would be frustrated. It would function in an anomalous aura of uncertainty, either pronouncing judgments almost certain to be overturned by authoritative determinations in other courts that the matters purportedly determined were beyond its jurisdiction, or else declining to act (in itself a kind of jurisdictional determination) until directed by another court to accept jurisdiction. Indeed, the underlying reasons for recognizing jurisdiction to determine jurisdiction are so compelling that it is the duty of a court of limited jurisdiction to notice its lack of jurisdiction, even when no party raises the issue.[4] For these reasons this court, as a court of limited jurisdiction, has jurisdiction to determine whether and to what extent it has jurisdiction over claims before it.

The second question, relating to jurisdiction of this court to determine whether the state court, before removal to this court, had jurisdiction over the claims asserted against HUD in the removed actions, is a bit more complex.

■■■ 28 U.S.C. § 1442(a)(1) authorizes removal by any officer of the United States of a civil action commenced in a state court against the officer "for any act under color of such office." Although this removal statute neither confers nor enlarges the "original" subject matter jurisdiction of the district courts, e. g., *Martin v. Wyzanski,*

---

1. Cf. *Bor-Son Bldg. Corp. v. Heller,* 572 F.2d 174, 181 (8th Cir. 1978) ("[w]e do not think that § 1442(a)(1) contemplates a procedure whereby the Secretary can remove a case from a state court of *competent* jurisdiction and subsequently obtain *dismissal* on the basis that the federal court to which removal is effected is not a court of competent jurisdiction") (emphasis in the original). *See* text at n. 8 *infra,* regarding other aspects of *Bor-Son.*

2. *See* Part VII *infra.*

3. *See generally* 13 Wright, Miller, and Cooper, Federal Practice and Procedure § 3536 (1975).

4. *See, e. g., Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976); *Carlsberg Resources Corp. v. Cambria Savings and Loan Assoc.,* 554 F.2d 1254, 1256 (3d Cir. 1977). *Cf.* Fed.R.Civ.P. 12(h)(3).

262 F.Supp. 925 (D.Mass.1967), it authorizes the district courts to hear cases not within their original jurisdiction when such cases are removed from a state court. 14 Wright, Miller, and Cooper, Federal Practice and Procedure § 3727, at 691–692 (1976) ("the right of removal conferred on federal officers by statute has been held to be absolute, and may be exercised even though the action might not have been brought initially in a federal court"); 1A (Part 1) Moore, Federal Practice ¶ 0.164[2], at 323 (1979) ("a suit may be removed by the [federal] officer which is not within the original jurisdiction of the federal court"). If the state court lacks jurisdiction, however, then, at least in the absence of an independent jurisdictional grant apart from the removal statute, the district court lacks subject matter jurisdiction. See 1A (Part 1) Moore, id., at 323–324 ("[w]here the state court lacks jurisdiction, however, the federal court should dismiss the action as to the federal officer; and where there are other defendants, may remand the suit involving them"). Thus, in such a case, to determine its own jurisdiction the district court must pass upon the jurisdiction of the state court from which the case was removed. Since the district court as a court of limited jurisdiction must always retain jurisdiction in the limited sense of jurisdiction to determine its own jurisdiction, it follows that in the case of removal by a federal officer the district court has jurisdiction to determine the jurisdiction of the state court. For these reasons it appears that the removal statute itself confers jurisdiction to determine whether HUD and the Secretary are not subject to suit in the state court on a claim of the type asserted here.

## VI. Jurisdiction over Plaintiffs' Claims

### A. Applicability of 12 U.S.C. § 1702

As previously noted, six of these actions were originally filed in the state superior court. As the court of general jurisdiction of the state, no doubt that court had subject matter jurisdiction over claims other than those asserted against the Secretary of the United States Department of Housing and Urban Development. (This defendant is referred to herein, for convenience, as "HUD"; if it were to be material in any way, however, the plaintiffs formally sued the Secretary rather than the agency.) The claims against HUD present debatable jurisdictional questions.

Sovereign immunity, unless waived, protects the United States and its officers and agencies. It is commonly regarded as not merely a bar to liability but instead a bar to being sued—a jurisdictional bar. 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3654. Thus, a person attempting to invoke the jurisdiction of any court, state or federal, over a claim against the United States or one of its officers or agencies must show a specific statutory authorization to sue or else show that the suit is not in effect a suit against the United States, or any of its officers as such, or any of its agencies.

Plaintiffs allege in these cases that their claims against HUD arise out of a project in which HUD's participation was governed by the National Housing Act, 12 U.S.C. § 1701 et seq. That act contains the following "sue and be sued" clause in 12 U.S.C. § 1702:

> The Secretary shall, in carrying out the provisions of this subchapter [I] and subchapters II, III, V, VI, VII, VIII, X, IX–A, and IX–B, of this chapter [the National Housing Act], be authorized in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

Does the waiver of sovereign immunity in § 1702 apply to the claims presented in the present cases?

The quoted provision was added to the National Housing Act by amendment in 1935. Act of August 23, 1935, c. 614, § 344(a), 49 Stat. 684, 722. The legislative history of this provision sheds no light on the manner in which it should be interpreted. See S.Rep.No.1007, 74th Cong., 1st Sess. (1935); H.R.Rep.No.1822, 74th Cong., 1st Sess. (1935).

■ The "sue and be sued" clause of 12 U.S.C. § 1702 plainly waives sovereign immunity for some kinds of cases. It cannot sensibly be read in any other way, and this reading is confirmed in precedents. *E. g., Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). In *Burr*, however, the Supreme Court held that the "sue and be sued" clause of § 1702 is a limited waiver, authorizing the suit in that instance against the agency, but limiting recovery to funds in the possession and control of the agency. Where recovery would require funds from the public treasury, on the other hand, the suit is one against the United States, *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), and does not come within the limited waiver of sovereign immunity contained in § 1702. *Marcus Garvey Square, Inc., v. Winston Burnett Construction Co.*, 595 F.2d 1126 (9th Cir. 1979); *DSI Corp. v. Secretary of HUD*, 594 F.2d 177 (9th Cir. 1979). See *Burr*, 309 U.S. at 250, 60 S.Ct. at 492. *Cf. Waylyn Corp. v. United States*, 231 F.2d 544 (1st Cir.), *cert. denied*, 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49 (1956).

■ In this case it is not alleged that HUD holds any funds related to the subject matter of this action. The ten per cent retainage as to which plaintiffs allege that HUD violated "equitable" obligations was not held by HUD and in any event was paid

out before these actions were commenced. This conclusion would end the inquiry about § 1702 were it not for reported cases in which the results reached might be thought inconsistent with the foregoing analysis.[5] In few of those cases, however, did the opinion of the court note whether the recovery sought would require funds from the United States Treasury and, if so, whether the limited waiver of sovereign immunity in § 1702 as construed in *Burr*, would be inapplicable.[6] None of those few cases appears to have involved a fact situation comparable to that in these actions, where the retainages from which plaintiff subcontractors allege they should have been paid were never held by HUD and in any event had been paid out in full before the actions were commenced. Moreover, to the extent that cases such as *Industrial Indemnity* and *S.S. Silberblatt, supra* n. 6, recognize general funds appropriated under the National Housing Act as a source of monetary recovery not involving funds from the public treasury, thus making the actions at issue not against the United States, they go far beyond *Burr*. *Burr* recognized that to allow a creditor of an employee of a federal agency to reach, through a writ of garnishment, the employee's claim for wages, on which claim the employee could sue the agency under a "sue and be sued" clause, did not enlarge the agency's liability. "[T]he end result is simply to allow a suit for the collection of a claim on which Con-

---

5. See Part VI–B(2) *infra*.

6. *Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644 (5th Cir. 1980), *S.S. Silberblatt, Inc. v. East Harlem Pilot Block Building 1 Housing Development Fund Co.*, 608 F.2d 28 (2nd Cir. 1979), and *United States v. American National Bank & Trust Co.*, 443 F.Supp. 167 (N.D.Ill. 1977), addressed this issue but found recovery would not involve funds from the U.S. Treasury. *Industrial Indemnity* concluded that "[a] judgment against the Secretary establishing plaintiff's entitlement can be paid out of money in the General Insurance Fund that is a separate fund in the control and possession of the Secretary." 615 F.2d at 646 (footnotes omitted). *S.S. Silberblatt* concluded that recovery would not involve funds from the U.S. Treasury "if the judgment could be paid out of funds appropriated under the National Housing Act

and in the control or subject to the discretion of the Secretary, . . . even though it would not be paid out of funds originally and specifically earmarked for the . . . project" involved in the lawsuit. 608 F.2d at 36. *American National Bank* involved a counterclaim which was asserted against the United States (which had brought an action on behalf of the Secretary of HUD) and which did not seek "direct monetary relief against the government, but only . . . declaratory relief, an accounting, and collection of misspent funds belonging to HUD, and a modification of the mortgage financing agreements." 443 F.Supp. at 171. The court concluded that "[i]n these circumstances, there is no conceivable threat that other United States monies will be subjected to execution if the counterclaim is successful." *Id.*

gress expressly made [the agency] suable." *Burr*, 309 U.S. at 249, 60 S.Ct. at 492. Thus, recovery was limited to funds which the agency already had an obligation to pay, and the funds would be used for the purpose for which they were appropriated, to pay the employee's wages. Allowing recovery from the General Insurance Fund or other funds appropriated under the National Housing Act is a different proposition, however. To allow these funds to be used as a source of recovery in a lawsuit such as these is to divert them from the purposes for which they were appropriated. If those purposes were then to be carried out additional funds would have to be appropriated from the public treasury. Recovery in these actions, then, would involve funds from the public treasury. For this reason, it seems appropriate to adhere to the conclusion, stated above, that the complaints do not allege any claim with respect to which the waiver of immunity in § 1702 applies.

■ Plaintiffs' claims for declaratory and equitable relief in the present cases are ancillary to their claims for money awards. The complaints make clear that their central objective is to recover money awards for the plaintiffs' losses. The basic principle of the limitation of the waiver, as recognized in *Burr* and its progeny, would be frustrated if a court were to take jurisdiction over ancillary claims to adjudicate issues that would be of interest chiefly, and perhaps even only, because of their potential effect, by way of collateral estoppel, on claims for money awards to be collected from the United States Treasury. The § 1702 waiver of sovereign immunity is therefore inapplicable to the plaintiffs' claims for ancillary relief in these cases, as well as their claims for damages.[7]

■ Apart from 12 U.S.C. § 1702, no waiver of sovereign immunity potentially applicable in the state superior court is suggested. It follows from the foregoing conclusions, then, that the state superior court

lacked jurisdiction over the claims against HUD in these cases. It remains necessary to consider, however, whether there is some independent basis for jurisdiction in the United States district court.

### B. Applicability of Other Federal Statutes

### (1) The Tort Claims Act and The Tucker Act

The Tort Claims Act and the Tucker Act provide a suitable point of departure for determining what federal courts have jurisdiction over plaintiffs' claims. They are codified in the following sections of Title 28 of the United States Code:

§ 1346. United States as defendant

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax . . .;

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

. . .

(b) Subject to the provisions of chapter 171 of this title [§§ 2671–2680], the district courts . . . shall have exclusive jurisdiction of civil actions or claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person,

---

7. In further support of this conclusion regarding claims for ancillary relief, see the discussion of an analogous issue regarding claims for ancillary relief as bearing on the question

whether the exclusivity principle of the Tort Claims Act and the Tucker Act applies to these cases, Part VI–B(3) *infra*.

would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

. . . . .

§ 1491. Claims against United States generally; . . .

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

§ 2675. Disposition by federal agency as prerequisite; evidence

(a) An action shall not be instituted upon a claim against the United States which has been presented to a federal agency, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the government while acting within the scope of his authority, unless such federal agency has made final disposition of the claim.

. . . . .

§ 2679. Exclusiveness of remedy

(a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

(b) The remedy by suit against the United States as provided by section 1346(b) of this title for damage to property or for personal injury, including death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim.

. . . . .

(d) Upon a certification by the Attorney General that the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (b) of this section is not available against the United States, the case shall be remanded to the State court.

. . . . .

At least at first blush, these provisions appear to subsume all claims against the United States for damages: with respect to tort claims, the district courts are given jurisdiction; with respect to other claims for damages—in the words of the statutes, claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort"—the district courts and the Court of Claims have concurrent jurisdiction of claims not exceeding $10,000 in amount, and the Court of Claims has jurisdiction of claims exceeding $10,000.

### (2) Do Other Jurisdictional Statutes Apply?

On a variety of theories, *Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644 (5th Cir. 1980) (jurisdiction under 28 U.S.C. § 1331); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Devel-*

*opment Fund Co.*, 608 F.2d 28 (2nd Cir. 1979) (jurisdiction under 28 U.S.C. § 1442); *Trans-Bay Engineers and Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir.1976) (jurisdiction under 28 U.S.C. §§ 1331 and 1332); *Bor-Son Building Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978) (jurisdiction under 28 U.S.C. § 1442), and other cases [8] have found jurisdiction in the district courts over claims against HUD for monetary relief in excess of $10,000. Also, several First Circuit decisions have recognized jurisdiction over actions against a federal officer or agency concerned with administration of the National Housing Act.[9]

These bodies of case law, though possibly distinguishable on holdings from the precedents referred to *supra*, Part VI–A, and

---

8. *E. g., Spring Construction Co. v. Harris*, 562 F.2d 933 (4th Cir. 1977) (no discussion of jurisdictional issue; jurisdiction presumably based on 12 U.S.C. § 1702 (*see Ferguson v. Union National Bank*, 126 F.2d 753 (4th Cir. 1942) and *Seven Oaks, Inc. v. Federal Housing Administration*, 171 F.2d 947 (4th Cir. 1948)); *United States v. American National Bank and Trust Co.*, 443 F.Supp. 167 (N.D.Ill.1977) (jurisdiction under 28 U.S.C. § 1331); *Bennett Construction Co. v. Allen Gardens, Inc.*, 433 F.Supp. 825 (W.D.Mo.1977) (jurisdiction under 28 U.S.C. §§ 1441 and 1442); *F.W. Eversley & Co. v. East New York Non-profit HDFC, Inc.*, 409 F.Supp. 791 (S.D.N.Y.1976) (no discussion of jurisdictional issue; jurisdiction presumably based on 28 U.S.C. § 1442(a)(1)); *American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164 (D.V.I.1975) (jurisdiction under 4 V.I.C. § 32(a)); *Ghent v. Lynn*, 392 F.Supp. 879 (D.Conn.1975) (jurisdiction under 28 U.S.C. § 1331); *Brown v. Lynn*, 385 F.Supp. 986 (N.D. Ill.1974) (jurisdiction under 28 U.S.C. §§ 1331, 1361 and 5 U.S.C. § 701); *Hartford Accident and Indemnity Co. v. Town of Saltillo*, 371 F.Supp. 331 (N.D.Miss.1974) (jurisdiction under 12 U.S.C. § 1749a(c)(3); *James T. Barnes & Co. v. Romney*, 334 F.Supp. 657 (E.D.Mich.1971) (jurisdiction under 12 U.S.C. § 1702); *Travelers Indemnity Co. v. First National State Bank*, 328 F.Supp. 208 (D.N.J.1971) (jurisdiction under 12 U.S.C. § 1702). *Cf. Marcus Garvey Square, Inc. v. Winston Burnett Construction Co.*, 595 F.2d 1126 (9th Cir. 1979) (jurisdiction over "statutory" claims under 28 U.S.C. § 1331; no jurisdiction over "contract" claims). *See also A.L. Rowan & Son v. Department of Housing and Urban Development*, 611 F.2d 997 (5th Cir. 1980); *Merge v. Sharott*, 341 F.2d 989 (3rd Cir. 1965); *George H. Evans & Co. v. United States*, 169 F.2d 500 (3rd Cir. 1948). Cases which have found no jurisdiction in the district courts over such claims include *DSI Corp. v. Secretary of Housing and Urban Development*, 594 F.2d 177 (9th Cir. 1979); *Lindy v. Lynn*, 501 F.2d 1367 (3rd Cir. 1974); *Akin Mobile Homes, Inc. v. Secretary of Housing and Urban Development*, 475 F.2d 1261 (5th Cir. 1973), *aff'g* 354 F.Supp. 1036 (S.D.Miss.1972); *Modular Technics Corp. v. South Haven Houses Housing Development Fund Co.*, 403 F.Supp. 204 (E.D. N.Y.1975), *aff'd without opinion*, 538 F.2d 311 (2nd Cir. 1976).

9. *Krupp v. Federal Housing Administration*, 285 F.2d 833 (1st Cir. 1961) (appeal from action against FHA for breach of warranty and deceit, brought in district court; no discussion of jurisdiction; no indication of amount in controversy [also no indication of amount in controversy in decision below, reported at 185 F.Supp. 638 (D.Mass.1960)]); *Garden Homes, Inc. v. Mason*, 249 F.2d 71, 72, 73 (1st Cir. 1957), *cert. denied*, 356 U.S. 903, 78 S.Ct. 562, 2 L.Ed.2d 580 (1958) ("The complaint, as amended, was filed originally in the Superior Court of Hillsborough County in the State of New Hampshire. It undertook to set forth a claim in the sum of one million dollars for breach of contract against the Federal Housing Commissioner, on a contract made by 'the defendant or his predecessors in office' in the course of administration of the National Housing Act, 12 U.S. C.A. § 1702 *et seq.*" "The action could have been originally brought in the district court under 28 U.S.C. § 1331, and was properly removable under 28 U.S.C. § 1441. Also, the complaint discloses a case of diversity of citizenship . . . . Furthermore, the Congress has authorized the removal of cases of this sort under 28 U.S.C. § 1442(a)(1), 'since it was a civil action against an "officer of the United States or any agency thereof" for an "act under color of such office." ' "); *compare Waylyn Corp. v. United States*, 231 F.2d 544 (1st Cir.), *cert. denied*, 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49 (1956) (suit by U.S. seeking to recover on mortgage note assigned to Federal Housing Commissioner [loan for which note was given having been insured by FHA under 12 U.S.C. § 1702 *et seq.*], in which counterclaim for $1.5 million was asserted against U.S.; *held*, no jurisdiction over counterclaim, there having been no applicable waiver of sovereign immunity; implies district court would have had jurisdiction if Federal Housing Commissioner had brought suit and counterclaim had been asserted against him). If these cases were regarded as establishing a First Circuit rule contrary to this court's understanding of *Burr* and its progeny, as developed in Part IV–A *supra*, that ground of decision of the present cases would disappear but the same disposition would nevertheless be required under the First Circuit rule on the independent question discussed in Part VI–B(3) *infra*.

*infra*, Part VI–B(3), appear at least to be inconsistent in principle with those precedents. The decision of the present cases is therefore based on the grounds stated in Parts VI–A *supra*, and VI–B(3) immediately *infra*.

### (3) The Exclusivity Principle

In contrast with the cases discussed in subsection (2) immediately above, the decision of the First Circuit Court of Appeals in *American Science and Engineering, Inc. v. Califano*, 571 F.2d 58 (1978), points to the conclusion that no jurisdictional basis exists for this court to hear this case.

In *American Science*, the plaintiff, a manufacturer of a device under contract with the Department of Health, Education and Welfare (HEW), filed an original action in a federal district court, alleging breach of contract and violations both of the "applicable Regulations of HEW" and due process of law and seeking declaratory relief, damages in the amount of $100,000,000, and an injunction to prevent HEW from issuing licenses for production by manufacturers other than plaintiff. As alternative bases for jurisdiction in the district court the plaintiff invoked 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1361 (mandamus), and 5 U.S.C. § 701 *et seq.* (Administrative Procedure Act). The Court of Appeals held that the plaintiff's claims were "essentially a contract dispute" over which the Court of Claims had exclusive jurisdiction and that "the jurisdictional bases alleged to bring this dispute within the authority of the district court [were] inapplicable to plaintiff's complaints." 571 F.2d at 61, 62.

*American Science*, of course, was an action involving a contract between the plaintiff and a federal agency, whereas the matters now before the court are actions involving contracts between HUD and others but no contract between any of the plaintiffs and HUD. Since HUD made no contracts with any of the plaintiffs, plaintiffs' claims cannot be classified as "essentially contract disputes" unless plaintiffs are characterized as third-party beneficiaries of HUD's contract (or contracts) with the owner, contractor, and mortgagee of the project. But even if plaintiffs' damage claims cannot be characterized as "contract disputes," they are claims against the United States founded upon "[an] Act of Congress, or [a] regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort," and thus claims within the jurisdiction conferred on the Court of Claims by the Tucker Act. To find a jurisdictional grant to the district courts in 28 U.S.C. § 1331 or some other source "would be to undercut the exclusive jurisdiction of the Court of Claims," 571 F.2d at 63, which *American Science* expressly declined to do.

*American Science* as thus interpreted is at least in principle if not in precise holding at odds with *Industrial Indemnity, S.S. Silberblatt, Trans-Bay, Bor-Son*, and the cases cited in n. 8 *supra*, as supporting jurisdiction in district courts.

*American Science* might be distinguished from the present case and cases such as *Industrial Indemnity, S.S. Silberblatt, Trans-Bay*, and *Bor-Son*, its holding being confined narrowly to the type of case then before the court, not involving the National Housing Act and in particular 12 U.S.C. § 1702, as do the present cases and *Industrial Indemnity, S.S. Silberblatt, Trans-Bay*, and *Bor-Son*. The opinion in *American Science*, however, does not speak in such technically narrow terms. Nor can the principle manifested in that opinion be so narrowly confined. The essence of the reasoning in *American Science* may fairly be described as founded upon a principle of judicial respect for the exclusivity of jurisdiction in the Court of Claims for types of cases to which the Tucker Act applies and in which the amount in controversy exceeds $10,000. Thus, if decisions such as *Industrial Indemnity, S.S. Silberblatt, Trans-Bay*, and *Bor-Son* are interpreted as supporting jurisdiction in both the district courts and the Court of Claims over claims such as those asserted here against HUD, they are in conflict with the exclusivity principle articulated in *American Science*.

In the present case, some of the claims asserted might reasonably be regarded as "sounding in tort." This distinction, however, in no way weakens the grounds for applicability of the exclusivity principle. Section 2679(a) and (b) of Title 28 make clear that the Tort Claims Act is the exclusive remedy for claims sounding in tort, notwithstanding provisions, such as those in the National Housing Act, 12 U.S.C. § 1702, allowing an agency to sue and be sued in its own name. *See also Bor-Son*, 572 F.2d at 177; 14 Wright, Miller, and Cooper, Federal Practice and Procedure § 3658, at 27 (1978 Supp.). Moreover, it is well settled that "fil[ing] an administrative claim within the statutory two year period is a condition of jurisdiction under the Federal Tort Claims Act; the failure to do so bars the action." 14 Wright, Miller, and Cooper, Federal Practice and Procedure § 3658, at 27 (1978 Supp.). Since the pleadings in this case do not disclose satisfaction of this prerequisite, they do not disclose any basis upon which this court has jurisdiction over any tort claim alleged against HUD in this case.

For claims not sounding in tort there is no exclusivity provision comparable to § 2679(a) and (b). There is, however, other evidence, within the language of the Tucker Act itself, supporting the conclusion that the principle of exclusivity, if not explicitly stated in that Act, is nevertheless clearly implied.

In § 1346(a)(2) the district courts are given original jurisdiction, concurrent with the Court of Claims, of any civil action or claim against the United States, other than tax claims dealt with in paragraph (1),

> not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

Precisely the same phrases that appear after "not exceeding $10,000 in amount" in § 1346(a)(2) appear also in § 1491, stating the jurisdiction of the Court of Claims. Two inferences are compelling: first, that

the waiver of immunity stated in the Tucker Act, as to cases involving more than $10,000, is limited to cases brought in the Court of Claims; second, that the Court of Claims is the only court that is to have jurisdiction over claims of this type against the United States. Stated another way, the second of these compelling inferences is that, because of the identity of key phrases in 28 U.S.C. §§ 1346(a)(2) and 1491 and the way these two sections of Title 28 fit together, they imply, even though they do not say explicitly, that courts other than the Court of Claims (including U.S. district courts as well as state courts) shall not have jurisdiction over claims of this type.

This inference from the juxtaposition of language in 28 U.S.C. §§ 1346(a)(2) and 1491 is confirmed by a close examination of the original "Tucker Act," 24 Stat. 505, 49th Cong., Sess. II, ch. 359 (1887). The first section (unnumbered) declares that the Court of Claims shall have jurisdiction to hear specified claims "in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States . . . if the United States were suable . . . ."

The act then provides:

Sec. 2. That the district courts of the United States shall have concurrent jurisdiction with the Court of Claims as to all matters named in the preceding section where the amount of the claim does not exceed óne thousand dollars, and the circuit courts of the United States shall have concurrent jurisdiction in all cases where the amount of such claim exceeds one thousand dollars and does not exceed ten thousand dollars. All cases brought and tried under the provisions of this act shall be tried by the court without a jury.

. . . . .

Sec. 5. That the plaintiff in any suit brought under the provisions of the second section of this act shall file a petition, duly verified with the clerk of the respective court having jurisdiction of the case, and in the district where the plaintiff resides. Such petition shall set forth the full name and residence of the

plaintiff, the nature of his claim, and a succinct statement of the facts upon which the claim is based, the money or any other thing claimed, or the damages sought to be recovered and praying the court for a judgment or decree upon the facts and law.

.    .    .    .    .

Sec. 7. That it shall be the duty of the court to cause a written opinion to be filed in the cause, setting forth the specific findings by the court of the facts therein and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. If the suit be in equity or admiralty, the court shall proceed with the same according to the rules of such courts.

Other Sections of the act include provisions for service upon local district attorneys in district court cases, for appeal and review, for reports to the Attorney General and to Congress, and for costs. Those provisions, together with (a) the provision of Section 2 declaring that all cases thereunder shall be tried by the court without a jury, (b) the provision in Section 5 that the petition shall be verified, and (c) the provision in Section 7 that the court shall file a written opinion, with specific findings of fact and conclusions of law, disclose a comprehensive plan for adjudication of non-tort claims "in respect of which," in the language of the first Section of the Act, the claimant "would be entitled to redress against the United States." Since this plan has features not generally characteristic of proceedings in U.S. district courts and state courts, it is reasonable to read the Act as implying, even if it does not express in just these words, that the comprehensive plan it establishes is to be the exclusive plan for "redress against the United States." This reading of the original Tucker Act is also consistent with the authorities previously cited—including *Burr, Dugan v. Rank, Land v. Dollar, Marcus Garvey Square,* and *DSI Corp.*—in support of the conclusion that the waiver of sovereign immunity in 12 U.S.C. § 1702 is not applicable when the recovery that is sought would require funds from the U.S. Treasury.

■ If, in contrast with this interpretation of the Tucker Act, a general "sue and be sued" clause such as that found in 12 U.S.C. § 1702 is read as a general authorization to sue the Secretary of HUD, even when suit would involve recovery from the U.S. Treasury, and if a jurisdictional basis is then found for suit in the district courts, whether under the general federal question statute, 28 U.S.C. § 1331, or under the federal officer removal statute, 28 U.S.C. § 1442, the Congressional policy manifested in the Tucker Act in favor of causing non-tort actions against the United States for damages in excess of $10,000 to be heard in the Court of Claims and not in district courts would be seriously undercut. One should not lightly attribute to Congress an "intent"—or, in less fictional language, attribute to statutes enacted by Congress a "legislative purpose"—to create such an anomalous combination of rules, one seriously undermining the other. The array of statutes invoked here should be read, instead, as aimed at creating a sensible combination of rules that serve the central policies manifested in the Tucker Act and the Tort Claims Act, while allowing the Secretary of HUD to be sued in other courts of "competent jurisdiction" in relation to matters not governed by the exclusivity principles of these two acts. In short, even if 12 U.S.C. § 1702 were a general waiver of sovereign immunity and even if a basis might be found in 28 U.S.C. § 1331 or § 1442 or elsewhere supporting jurisdiction in the district courts, the more specific policy of exclusivity of jurisdiction in the Court of Claims overrides the more general jurisdictional grant found elsewhere.

■ Finally, as previously noted in Part VI–A *supra,* plaintiffs' claims for declaratory and equitable relief are ancillary to their central objective of collecting a money award. Such ancillary claims do not remove a case from the scope of the exclusive remedy provisions of the Tucker Act. *American Science, supra ; Cook v. Arentzen,* 582 F.2d 870, 878 (4th Cir. 1978).

■ The conclusion, therefore, is that the Court of Claims has exclusive jurisdiction over plaintiffs' claims against HUD.

## VII. Transfer

■ 28 U.S.C. § 1406(c) provides as follows:

If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed as if it had been filed in the Court of Claims on the date it was filed in the district court.

Thus, as to No. 77–2084, this court has authority to transfer to the Court of Claims that portion of the action involving claims against HUD. It may be doubted whether the expression "filed in a district court" applies to actions such as the six that were filed originally in a state court and removed to this court. Counsel have not cited nor has the court found direct authority bearing on whether this court may transfer to the Court of Claims a case, or a portion of a case, originally filed in a state court and removed to this court. It may be argued that the six removed cases are now "on file" here and that "filed" in § 1406(c) should be interpreted as embracing all cases "on file." Although this may be a debatable reading, it is at least one among those the words will bear. It is relevant to the choice among interpretations the words will bear that, since the state court from which these actions were removed lacks jurisdiction over the counts alleging claims against HUD only, the only viable options are to transfer or to dismiss [10] (without prejudice, leaving the plaintiffs free to file their non-tort claims in the Court of Claims). Lest any argument for a limitations bar be strengthened by such a dismissal, it seems fairer and more appropriate to order a transfer of these HUD–only counts to the Court of Claims.[11] Such an order of transfer also seems more consistent than would dismissal with the principle of *American Science*, even though the holding on transfer in that case is not directly in point since that case involved an action filed originally in the district court rather than a removed action.

All counts in these actions involving claims against HUD are ordered transferred to the Court of Claims, subject to the terms of Part VIII, *infra*.

## VIII.

### Interlocutory Appeal

■ The court is of the opinion that the orders of transfer in these actions, based on the position taken in this memorandum on the jurisdictional issues in these actions, involve controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the orders may materially advance the ultimate termination of the litigation. The orders of transfer and all further proceedings in this court are stayed for 10 days to allow an application for appeal to be filed under 28 U.S.C. § 1292(b). If such application is filed, a further stay will be allowed while the Court of Appeals determines whether the appeal will be permitted. If and when the orders of transfer become effective the remaining counts in No. 77–2084 will be dismissed and the remaining counts in the six removed actions will be remanded to the state courts from which they were removed. *Cf. Ondis v. Barrows*, 538 F.2d 904, 908 (1st Cir. 1976); *Bor-Son*, 572 F.2d at 181; *Ronan v. Stone*, 396 F.2d 502, 503 (1st Cir. 1968).

10. *Cf.* Fed.R.Civ.P. 12(h)(3): "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." It seems inappropriate, however, to read this rule as precluding transfer in all instances. If so interpreted, it would be in conflict, for example, with 28 U.S.C. § 1406(c).

11. The order of transfer is, of course, a ruling that does not determine or in any way affect HUD's second ground of dismissal—in which HUD argues that the complaint, on the merits, fails to state a claim against HUD upon which relief can be granted. That issue will remain for determination in the Court of Claims.