**Decided January 22, 1982**

250

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CARL M. BAUER, | CV NO. 81-0019 |
| Plaintiff, | |
| vs. | D E C I S I O N |
| JANET McCOY,* High Commissioner of the Trust Territory of the Pacific Islands, JAMES WATT, Secretary of the Department of Interior, and UNITED STATES OF AMERICA, | |
| Defendants. | |

DECISION

LAURETA, District Judge:

Plaintiff Carl Bauer brings this action to recover educational allowances under 5 U.S.C. § 5924(4)(A). He alleges the deprivation of those benefits in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

Defendant United States of America moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defendants Watt and McCoy file Rule 12(b)(6) dismissal motions for failure to state a claim, which, for reasons explained below, the Court adjudicates as summary judgment motions. After carefully considering the parties' arguments and the applicable law, the Court grants all three motions.

*Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted recently appointed High Commissioner Janet McCoy in place of the original defendant High Commissioner Adrian Winkel.

252

# I. FACTS

Plaintiff Carl Bauer is a United States citizen employed by the United States Department of Interior's Office of Territorial Affairs. During all periods relevant to this action the Interior Department has assigned him to the government of the Trust Territory of the Pacific Islands.[1]

In 1978 plaintiff sought a $7,006.63 reimbursement under 5 U.S.C. § 5924(4)(A)[2] for expenses incurred during 1977-1978 for his daughter's education at a private high school in Japan. The amount claimed was within the applicable maximum rate established by State Department regulations implementing

- - - - - - - - - -

[1] Since 1947 the United States has governed the Trust Territory of the Pacific Islands pursuant to the Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, 61 Stat. 3301, T.I.A.S. No. 1665. Smith v. Pangelinian, 651 F.2d 1320, 1321 (9th Cir. 1981). The Trust Territory government is an entity created and supervised by the Department of Interior through a series of Secretarial Orders. E.g., Secretarial Order No. 2918, 34 Fed. Reg. 157 (1968); Secretarial Order No. 2658, 16 Fed. Reg. 9052 (1951). The Secretary of Interior acts under delegation from the President. Exec. Order No. 11021, 27 Fed. Reg. 4409 (1962). The President's power flows from Congress, the United States' governmental branch with ultimate authority over Trust Territory governance. 48 U.S.C. § 1681(a).

[2] 5 U.S.C. § 5924(4)(A) states in pertinent section:

The following cost of living allowances may be granted, when applicable, to an employee in a foreign area:

An education allowance . . . to assist an employee . . . in providing adequate education for his dependents, as follows:

(A) An allowance not to exceed the cost of obtaining such elementary and secondary educational services as are ordinarily provided without charge by the public schools in the United States, plus, in those cases when adequate schools are not available at the post of the employee, board and room, and periodic transportation between that post and the nearest locality where adequate schools are available, without regard to section 529 of title 31. The amount of the allowance granted shall be determined on the basis of the educational facility used.

This statute is part of the Overseas Differentials and Allowances Act, 5 U.S.C. § 5921 et seq.

253

§ 5924(4)(A) under presidential delegation.[3]

Plaintiff submitted his request to the Trust Territory High Commissioner, a United States official serving as the Trust Territory's chief executive by presidential appointment.[4] Citing budgetary constraints, the High Commissioner disallowed $1,706.53 of plaintiff's claim. The High Commissioner had previously imposed a $5300 ceiling on education allowances pursuant to authority allegedly conferred by the Secretary of Interior.[5]

Plaintiff unsuccessfully attempted to administratively challenge the High Commissioner's decision.[6] During the pendency of the administrative proceedings plaintiff did not formally file for allowances for expenses incurred in school years after 1977-1978.

On April 24, 1981 plaintiff initiated this action against Secretary of Interior Watt and then-incumbent High Commissioner Winkel in their official capacities. The parties subsequently stipulated to the joinder of the United States of America as a defendant.

- - - - - - - - - -

[3] 5 U.S.C. § 5922(c)(1) authorizes the President to prescribe payment rates for § 5924(4)(A) educational benefits and other employee allowances. The President delegated this authority to the Secretary of State. Exec. Order No. 10903, 26 Fed. Reg. 217 (1961). The Secretary of State subsequently exercised this power by issuing regulations which were not published in the Federal Register. See Department of State Standardized Regulations (Government Civilians, Foreign Areas). Section 920 of these regulations lists maximum annual rates for payment of benefits. At the time of plaintiff's request the applicable rate was $7,150.00 per dependant.

[4] 48 U.S.C. § 1681a. See page 21, infra.

[5] Department of Interior Manual Part 205, Chapter 8.

[6] The Comptroller General ruled that plaintiff is entitled only to the rate established by the High Commissioner. See Matter of Carl Bauer, B-192267 at 8 (Comp. Gen. September 10, 1980) (Exhibit I, defendants Watt and United States' Opposition to Motion to Set Hearing, December 22, 1981).

Plaintiff's central contention is that he has a constitutionally protected property interest in educational allowance payment in accordance with the State Department maximum rate. His argument is that he is entitled to annual allowances covering all of his educational expenditures so long as each year's expenditures do not exceed the State Department maximum. He asserts that defendants have deprived him of that entitlement and thus violated his due process rights[7] under the Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiff requests the following specific relief:

1. an order under 5 U.S.C. § 706(2) of the Administrative Procedure Act (APA)[8] setting aside as arbitrary and capricious the High Commissioner's educational allowance schedule;

2. a declaration that the Department of State's maximum rate schedule governs educational allowances under 5 U.S.C. § 5924(4)(A); and

3. an order granting plaintiff "the full educational allowances covering the years to which he is entitled to it." Second Amended Complaint at 5, paragraph three. Plaintiff estimates that his total disputed allowances now exceed $10,000. Id. at 4, Count I, paragraph 20.[9]

Plaintiff additionally seeks "other and further" appropriate relief.

The United States moves to dismiss for lack of subject matter jurisdiction. The other defendants seek dismissal for failure to state a claim.

- - - - - - - - - -

[7]Plaintiff broadly refers to the violation of Fifth and Fourteenth Amendment "rights". Because the substance of the complaint avers the unconstitutional deprivation of property, the Court interprets it as alleging a violation of due process.

[8]5 U.S.C. § 701-706.

[9]These allegations defeat plaintiff's contention that this case does not involve over $10,000. See pages 7-9, infra.

## II. DEFENDANT UNITED STATES' MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

 Plaintiff alleges jurisdiction as to all defendants under 28 U.S.C. § 1331,[10] the APA, the Tucker Act,[11] and 48 U.S.C. § 1694a(a).[12] On a motion to dismiss for lack of subject matter jurisdiction, the Court must construe the complaint in plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L.Ed.2d 90, 94 S.Ct. 1683, 1686 (1974). The Court evaluates the entire complaint, not merely the jurisdictional statement, to ascertain whether a basis for assuming jurisdiction exists. 5 Wright & Miller, Federal Practice and Procedure: Civil § 1350 at 551-552 (1973)(Wright & Miller); id. § 1206 at 77-78. It must liberally read the complaint to determine whether the allegations establish jurisdiction on grounds other than those pleaded. Hildebrand v. Honeywell, 622 F.2d 179, 181 (5th Cir. 1980); see Aguirre v. Automotive Teamsters, 633 F.2d 168, 174 (9th Cir. 1980). Here the allegations fail to confer jurisdiction as to the United States under the statutes invoked or on other grounds.

- - - - - - - - - -

[10] 28 U.S.C. § 1331 provides that "(t)he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[11] 28 U.S.C. § 1346(a)(2). The Tucker Act creates limited district court jurisdiction over causes against the United States not involving torts or tax refunds. In relevant section it states:

> (D)istrict courts shall have original jurisdiction, concurrent with the Court of Claims, of:

> (2) any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . .

[12] 48 U.S.C. § 1694a(a) grants this Court "the jurisdiction of a district court of the United States, except that in all causes arising under the Constitution, treaties or laws of the United States, it shall have jurisdiction regardless of the sum or value of the matter in controversy."

■ The reason is the absence of an applicable sovereign immunity waiver.[13] 28 U.S.C. § 1331 is a jurisdictional statute which does not waive the United States' sovereign immunity. Kester v. Campbell, 652 F.2d 13, 15 (9th Cir. 1981). It affords subject matter jurisdiction only if another statute waives the immunity. These principles likewise apply to 48 U.S.C. § 1694a(a).

■ Although the APA is not an independent source of federal subject matter jurisdiction,[14] it waives the United States' sovereign immunity. Laguna Hermosa Corp. v. B. E. Martin, 643 F.2d 13, 15 (9th Cir. 1981). Yet, it is a limited waiver. It relinquishes immunity only in actions for non-monetary relief in which plaintiff alleges that a federal agency or officer failed to act as required in an official capacity. Rowe v. U.S., 633 F.2d 799, 801 (9th Cir. 1980), cert. denied _____ U.S. _____, 68 L.Ed.2d 349, 101 S.Ct. 2047 (1981). In practical effect plaintiff seeks only monetary relief against the United States.[15] Therefore the APA's immunity waiver is inapplicable.

- - - - - - - - - -

[13]On the facts presented, sovereign immunity is not a jurisdictional bar to plaintiff's suit against the individual defendants. See pages 15-16 and note 31, and pages 24-27, infra.

[14]Califano v. Sanders, 430 U.S. 99, 105-107, 51 L.Ed.2d 192, 97 S.Ct. 980, 984-985 (1977).

[15]See pages 13-14, infra.

The question thus becomes whether the Court has subject matter jurisdiction under the Tucker Act. The United States argues that jurisdiction lies with the Court of Claims, rather than this Court, because plaintiff alleges more than $10,000 in controversy. Title 28 U.S.C. § 1491 grants the Court of Claims exclusive jurisdiction over Tucker Act suits for more than $10,000. Id.

Plaintiff counters with two arguments. First, he states that this case does not involve more than $10,000. He predicates this contention on the fact· that he has formally filed for an allowance only as to $7,006.63 in expenses during 1977-1978. Plaintiff's position thus appears to be that under the ripeness doctrine the only justiciable controversy presented is one involving less than $10,000. Second, plaintiff submits that the Court has jurisdiction even if this case involves more than $10,000. He reasons that 48 U.S.C. § 1694a(a) engrafts an exception to the Tucker Act's limitation on district court jurisdiction by giving this Court ·jurisdiction in federal question cases regardless of the amount in controversy. The Court rejects these arguments.

A. Scope of the Ripe Controversy

This Court is an Article IV "legislative" court rather than an Article III "constitutional" court.[16] Under 48 U.S.C.

- - - - - - - - - -

[16]An Article III "constitutional" court is one with jurisdiction over only cases and controversies enumerated in that article of the United States Constitution. Glidden Co. v. Zdanok, 370 U.S. 530, 552, 8 L.Ed.2d 671, 82 S.Ct. 1459, 1474 (1962). This Court is not an Article III court. Sablan v. Santos, 634 F.2d 1153, 1155 (9th Cir. 1980). It is an Article IV "legislative" court exercising Article III jurisdiction under 48 U.S.C. § 1694a(a), commonwealth trial jurisdiction under 48 U.S.C. § 1694a(b), and commonwealth appellate jurisdiction under 48 U.S.C. § 1694b. Congress creates Article IV courts pursuant to its authority under Article IV, § 3, cl.2 to make rules and regulations respecting territory belonging to the United States. American Insurance Co. v. 356 Bales of Cotton: Cantor, 1 Pet. 511, 546, 7 L.Ed. 242, 257 (1828). See generally 370 U.S. at 543-552, 8 L.Ed.2d 671, 82 S.Ct. at 1469-1474; Wright, Law of Federal Courts § 11 at 29-38 (1976) (Wright); Loring, Judicial Power

§ 1694a(a) it has "the jurisdiction of a district court of the United States"[17] in federal question and diversity cases. A "district court of the United States" is an Article III court.[18] Mookini v. U.S., 303 U.S. 201, 205, 82 L.Ed. 748, 58 S.Ct. 543, 545 (1938). Therefore, justiciability principles derived from Article III limit this Court's § 1694a(a) jurisdiction.[19]

The ripeness doctrine is one of these principles. The ripeness doctrine's foundations rest in Article III's case or controversy requirement as well as in non-constitutional prudential avoidance of premature adjudication. [Blanchette v. Conn. Gen. Ins. Corps] Regional Rail Reorganization Cases, 419 U.S. 102, 138, 42 L.Ed.2d 320, 95 S.Ct. 335, 356 (1974). A ripe dispute is one which has matured sufficiently for judicial resolution. Warth v. Seldin, 422 U.S. 490, 499 n. 10, 45 L.Ed.2d 343, 95 S.Ct. 2197, 2205 n. 10 (1975).

The case or controversy component requires that plaintiff be threatened with immediate injury which the requested relief would redress. Duke Power Co. v. Carolina Environmental Study Group Inc., 438 U.S. 59, 81, 57 L.Ed.2d 595, 98 S.Ct. 2620, 2635 (1978). An unconsummated injury which is certain to occur satisfies the Article III requirement. 419 U.S. at 143, 45 L.Ed.2d 34, 95 S.Ct. at 358. Prudential considerations further

- - - - - - - - - -

and Territorial Judges, 7 Hastings L.J. 62 (1955); Comment, Legislative and Constitutional Courts: What Lurks Ahead for Bifurcation, 71 Yale L.J. 979 (1962). Both the Supreme Court and commentators have questioned the contemporary soundness of the rationales originally advanced to distinguish between constitutional and legislative federal courts. See 370 U.S. 534, 545 n. 13, 548 n. 19, 8 L.Ed.2d 671, 82 S.Ct. at 1464, 1470 n. 13, 1472 n. 19; Wright § 11 at 31, 37-38; 17 Wright & Miller Federal Practice & Procedure: Jurisdiction § 4106 at 279-280 (1978); 13 id. § 3528 at 140-141.

[17]Note 12, supra.

[18]But see Government of the Virgin Islands v. May, 384 F.Supp. 1035, 1037 (D.V.I. 1974).

[19]Justiciability principles of standing, ripeness, and mootness are also relevant, although not constitutionally based, when this Court exercises jurisdiction under 48 U.S.C. § 1694a(b) and 48 U.S.C. § 1694b.

259

inquire whether additional time and factual development will render the legal issues more concrete,[20] and thereby advance the court's ability to resolve them. 438 U.S. at 82, 57 L.Ed.2d 595, 98 S.Ct. at 2635.

Notwithstanding plaintiff's failure to formally file for allowances after 1977-1978, this case is a ripe controversy over plaintiff's entitlement to reimbursement for more than $10,000 in educational expenses. The High Commissioner's denial of plaintiff's 1977-1978 claim is an alleged injury which has already occurred. Because the High Commissioner is certain to apply the disputed allowance limitation to plaintiff's post-1977-1978 allowance requests, plaintiff also faces immediate but unconsummated threatened injury under Article III ripeness concepts. The complaint reflects plaintiff's recognition of this fact. Plaintiff asks the Court to order defendants to reimburse all of his educational expenditures since 1977. He explicitly alleges that disallowed claims for those expenses exceed $10,000. Prudential concerns do not suggest that time will sharpen the issues and facilitate their resolution. When the issues raised are purely legal ones, a challenge to a regulation that has not yet been applied is ripe for adjudication. Pacific Legal Found. v. State Energy Resources, Etc., 659 F.2d 903, 915 (9th Cir. 1981); see Abbott Laboratories v. Gardner, 387 U.S. 136, 148-149, 18 L.Ed.2d 681, 87 S.Ct. 1507, 1515 (1967). The High Commissioner has already applied the disputed rate schedule against plaintiff once and will certainly apply it again. The justiciable controversy before the Court clearly involves more than $10,000.

- - - - - - - - -

[20]Pacific Legal Found. v. State Energy Resources, Etc.,
659 F.2d 903, 915 (9th Cir. 1981).

## B. The Tucker Act and 48 U.S.C. § 1694a(a)

The Tucker Act is both a jurisdictional grant and a limited sovereign immunity waiver. Marcus Garvey Square v. Winston Burnet Construction Co., 595 F.2d 1126, 1131 (9th Cir. 1979). In cases involving more than $10,000, it waives the United States' immunity only as to actions filed in the Court of Claims. Armor Elevator Co., Inc. v. Phoenix Urban Corp., 493 F.Supp. 876, 888 (D.Mass. 1980). An alternative source of jurisdiction, such as § 1694a(a), is relevant in a Tucker Act suit only if an alternative statute waives immunity. 595 F.2d at 1132.

No alternative waiver is present. Section 1694a(a) does not waive the United States' immunity. As noted above, it is only a jurisdictional grant. Like 28 U.S.C. § 1331, it provides subject matter jurisdiction over claims against the United States only if another statute waives sovereign immunity. Neither plaintiff's briefs nor the Court's independent research disclose such a statute.

Section 1694a(a)'s legislative history contains no evidence of a congressional intention to empower this Court to decide Tucker Act cases involving more than $10,000. Congress enacted the statute in 1977 to implement the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. 94-241, 90 Stat. 263 (1976), reprinted in 48 U.S.C. § 1681 note (the Covenant). S. Rept. No. 95-475 95th Cong. 1st Sess. 1, 2, reprinted in [1977] U.S. Code Cong. and Admin.

News 3307, 3308. Former 28 U.S.C. § 1331(a)[21] was in effect when Congress approved the Covenant and enacted 48 U.S.C. § 1694a(a). Section 1331(a) required that federal question cases in district courts must involve more than $10,000. Covenant § 402(a) and 48 U.S.C. § 1694a(a) gave this Court jurisdiction over federal question actions "regardless of the sum or value in controversy."[22] Congressional reports and other material analyzing § 402(a) reveal that the sole purpose of the quoted language was to legislate an exception to § 1331(a)'s jurisdictional minimum. It did not affect the Tucker Act's jurisdictional maximum.

A congressional committee which reviewed the Covenant declared that this Court's § 402(a) jurisdiction was to be coextensive with that of an Article III district court "with the exception that no jurisdictional amount is required in federal jurisdiction cases." S. Rept. No. 94-433 94th Cong. 1st Sess. (1975) reprinted in H. Marcuse, Covenant to Establish a Commonwealth of the Northern Mariana Islands: Basic Document and Annotations 30 (U.S. Department of Justice 1976) (Marcuse). The reference to a "required" jurisdictional amount plainly contemplates only a jurisdictional minimum amount in controversy. It does not erase all amount in controversy jurisdictional restrictions.

The committee further observed that "(a)nalogous provisions exist for Guam (48 U.S.C. 1424) and the Virgin Islands (48 U.S.C. 1612)." Id. The cited statutes grant the respective

- - - - - - - - - -

[21]Former 28 U.S.C. § 1331(a) stated:

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

On October 21, 1976, Congress eliminated the $10,000 amount in controversy prerequisite. Pub. L. 94-574, 90 Stat. 2721. The amended statute became 28 U.S.C. § 1331. See note 1, supra. It took effect on December 1, 1980.

[22]Note 12, supra. Covenant § 402(a) and 48 U.S.C. § 1694a(a) are identical except in one minor respect. Section 1694a(a) employs the word "shall" where § 402(a) uses the word "will".

district courts jurisdiction in federal question cases "regardless of the sum or value in controversy." Their legislative history, like that of § 402(a), demonstrates that this deceptively sweeping language actually removed only the federal question jurisdictional minimum then required in district courts. See S. Rept. No. 1582 85th Cong. 2d Sess. reprinted in [1958] U.S. Code Cong. & Admin. News 2623, 2628-2629; S. Rept. No. 1271, Conference Rept. reprinted in [1954] U.S. Code Cong. & Admin. News 2607, 2623-2624.

The Marianas delegation which negotiated the Covenant also understood § 402(a)'s objective to be the elimination of the jurisdictional minimum:

> Under federal law it is sometimes necessary to have a case which involves more than $10,000 in order to present a claim in federal court. This subsection assures that persons with claims arising under the Constitution or laws of the United States in the Northern Marianas will be able to have access to the federal court regardless of the amount of money which is involved in their case.

Marianas Political Status Commission, Section By Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands 34 (1975) reprinted in Marcuse 30 and in Hearings on S. J. Res. 107 Before the Committee on Interior and Insular Affairs, United States Senate 94th Cong. 1st Sess. 392 (1976).

The Tucker Act is a comprehensive statutory plan for re-dress against the United States. See 493 F.Supp. at 888-889. Courts should construe other statutes consistently with its central policies rather than lightly attribute to Congress an intent to create anomolous and conflicting rules which frustrate

those policies.[23] _Id._ The unsupportive precedents and legislative history fail to sustain plaintiff's argument that § 1694a(a) gives this Court jurisdiction over Tucker Act cases involving more than $10,000. The Court accordingly holds that it must dismiss plaintiff's monetary claim against the United States for lack of subject matter jurisdiction.[24]

The Court also lacks jurisdiction to grant equitable relief against the United States. When a complaint seeks both Tucker Act damages over $10,000 and to compel the performance of a duty other than the payment of money, district courts may retain jurisdiction of the equitable claim notwithstanding the lack of Tucker Act jurisdiction. _See_ 633 F.2d at 801-802. Yet, when reviewing a complaint's relief prayer, courts are not bound by the particular remedial labels affixed by plaintiff. _Denton v. Schlesinger_, 605 F.2d 484, 486 n. 5 (9th Cir. 1979). A prayer for equitable relief cannot forestall

- - - - - - - - - - -

[23]When plaintiff sues a federal official in his or her official capacity rather than the United States itself, sovereign immunity analysis proceeds under the more fluid principles and exceptions enunciated in _Dugan v. Rank_, 372 U.S. 609, 10 L.Ed.2d, 15, 83 S.Ct. 999 (1963); _Larson v. Domestic & Foreign Commerce Corp._, 337 U.S. 682, 93 L.Ed. 1628, 69 S.Ct. 1457, reh. denied 338 U.S. 840, 94 L.Ed. 514, 70 S.Ct. 31 (1949); and their progeny. See _Dry Creek Lodges Inc. v. U.S._, 515 F.2d 926, 930-932 (10th Cir. 1975); pages 24-27, _infra_.

[24]Under different circumstances the Court would consider transferring the cause to the Court of Claims pursuant to 28 U.S.C. § 1406(c). That statute provides:

> If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed as if it had been filed in the Court of Claims on the date it was filed in the district court.

Transfer rests within the district court's discretion. _Westside Property Owners v. Schlesinger_, 597 F.2d 1214, 1220 (9th Cir. 1979). A dismissal rather than a transfer is in the interest of justice here because the grants of summary judgment to the individual defendants effectively resolve the entire dispute between the parties.

dismissal when the "real effort of the complaining party is. to obtain money (in excess of $10,000) from the federal government." 643 F.2d at 1379. District courts lack subject matter jurisdiction where, as here, the ostensible equitable relief would operate only to determine the existence and the extent of monetary relief.[25] Cape Fox Corp. v. U.S., 646 F.2d 399, 402 (9th Cir. 1981). Dismissal is the proper disposition under such circumstances. Id.

### III. DEFENDANT SECRETARY OF INTERIOR WATT'S MOTION TO DISMISS

The Court has reviewed matter outside of the pleadings in deciding Watt's motion to dismiss for failure to state a claim. In accordance with Federal Rule of Civil Procedure 12(b), the Court treats the motion as a motion for summary judgment.[26] Under Rule 56(c), summary judgment is appropriate only if no genuine material factual issue exists and movant is entitled to judgment as a matter of law. U.S. v. First National Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981). The Court must construe the pleadings, other record evidence, and their attendant inferences most favorably to plaintiff. Id.

- - - - - - - - -

[25] Compare Laguna Hermosa Corp. v. Martin, 643 F.2d 1376 (9th Cir. 1981). Laguna Hermosa ruled that the district court could retain jurisdiction to declare that plaintiff possessed contract rights against the United States. It reasoned that district courts do not lose jurisdiction over equitable Tucker Act claims which later may provide the basis for monetary relief exceeding $10,000. Id. at 1379. This case is distinguishable from Laguna Hermosa. As a practical matter, the declaration sought here would result in contemporaneous monetary relief. Thus, this case falls more closely within the Cape Fox principle stated above.

[26] Plaintiff does not dispute that summary judgment is appropriate at this time. Plaintiff's Opposition to Defendants' Dismissal Motion at 5 (August 10, 1981). He has presented material pertinent to summary judgment as contemplated by Rule 12(b).

Non-discretionary action by the Secretary of Interior is reviewable under the APA.[27] See, e.g., Bituminous Coal Operators' Assoc. v. Secretary of Interior, 547 F.2d 240 (4th Cir. 1977); Pence v. Kleppe, 529 F.2d 135 (9th Cir. 1976). The complaint contains few averments of acts or omissions by Secretary Watt. Liberally construed in plaintiff's favor, it charges that Watt purported to delegate to the High Commissioner[28] authority which he himself lacked: the prerogative to set maximum rates lower than State Department maximum rates[29] as limitations upon educational allowances under 5 U.S.C. § 5924(4)(A).[30]

As noted above, the APA waives sovereign immunity only as to non-monetary claims.[31] Although plaintiff does not request any equitable relief directed specifically against Watt, he seeks other appropriate relief. If proven, his allegations would justify "other relief" in the form of a declaration that Watt lacked the authority purportedly delegated to the High Commissioner.

- - - - - - - - - -

[27] Plaintiff originally also sought relief under the Tucker Act and 42 U.S.C. § 1983. The Tucker Act is not available against the Secretary of Interior; it permits suits only against the United States. See Dema v. Feddor, 470 F.Supp. 152, 155 (N.D. Ill. 1979); cf. Morris v. U.S., 521 F.2d 872, 875 (9th Cir. 1975) (Federal Tort Claims Act confers jurisdiction only over suits against the United States and does not provide for suits against federal officials). Section 1983 does not apply to actions taken under color of federal law. Askew v. Bloemker, 548 F.2d 673, 677 (7th Cir. 1976); see Davis v. Passman, 442 U.S. 228, 238 n. 16, 60 L.Ed.2d 846, 99 S.Ct. 2264, 2273 n. 16 (1979). Because of that fact, plaintiff stipulated to dismiss, as to Watt, the complaint's § 1983 count alleging unconstitutional conduct. Thus, no constitutional claims against the Secretary remain.

[28] Note 5, supra.

[29] Note 3, supra.

[30] Note 2, supra.

[31] See page 6, supra. The analysis of plaintiff's cognizable equitable claim results in summary judgment for the Secretary of Interior. Therefore it is unnecessary to discuss the Court's jurisdiction over plaintiff's monetary claim against the Secretary in light of the Dugan sovereign immunity principles and exceptions cited at pages 24-27, infra.

An examination of the Department of State Standardized Regulations reveals that Watt had such authority. Section 013 provides in part:

> When authorized by law, the head of an agency[32] may . . . grant . . . cost-of-living . . . allowances[33] . . . to employees of his/her agency . . . subject to the provisions of these regulations and the availability of funds. (emphasis added)

Section 912.1 adds that "for the education . . . allowance the employee receives either the (maximum) rate . . . or a lower amount at the option of the officer designated to authorize allowances (emphasis added)." These provisions unambiguously empower Watt or his designees to pay educational allowances at rates lower than the State Department maximum when funds are inadequate.

Regulations issued under statutory authorization must be consistent with the statute in order to be valid. U.S. v. Larionoff, 431 U.S. 864, 873, 53 L.Ed.2d 48, 97 S.Ct. 2151, 2156 (1977). The agency's interpretation of the statute may not conflict with the language chosen by Congress. Mohasco Corp. v. Silver, 447 U.S. 807, 825, 65 L.Ed.2d 532, 100 S.Ct. 2486, 2496 (1980).

- - - - - - - - - -

[32] Section 040e defines a "head of agency" as "the head of a government agency or anyone designated by him to make determinations on his behalf." Section 40d(1) includes executive branch departments such as the Interior Department within its definition of "government agency."

[33] Section 211 defines a "cost-of-living allowance" as "an allowance granted pursuant to 5 U.S.C. 5924, educational travel authorized under subsection (4) thereof, and sections 210 through 280 of these regulations." This definition is consistent with § 5924's language, which subsumes educational allowances under the term "cost-of-living allowances."

The State Department regulations are consistent with the statutory scheme which they implement. The starting point in statutory analysis is the language of the statute itself. Owen v. City of Independence, 445 U.S. 622, 635, 63 L.Ed.2d 673, 100 S.Ct. 1398, 1407, reh. denied 446 U.S. 993, 64 L.Ed.2d 850, 100 S.Ct. 2979 (1980). Nothing in the language of the Overseas Differentials and Allowances Act entitles employees to either full education expense reimbursement or a specific minimum allowance. The Act's general provisions[34] and § 5924 state only that allowances "may" be granted. Unless the context of its use suggests otherwise, the word "may" in a statute connotes a permissive rather than a mandatory provision. Koch Refining Co. v. U.S. Department of Energy, 504 F.Supp. 593, 596 (D. Minn. 1980); see Burglin v. Morton, 527 F.2d 486, 488 (9th Cir. 1976), cert. denied 425 U.S. 973, 48 L.Ed.2d 796, 96 S.Ct. 2171 (1976). Here the context reflects no intention to abandon the word's ordinary meaning. The Act's general provisions further declare that presidential regulations concerning rates shall govern the payment of allowances. Title 5 U.S.C. § 5922(c)(1).[35] The Act thus granted the President broad authority to set guidelines for calculating and awarding benefits. Through delegation this power passed to the Secretary of State. The Secretary of State gave agency heads, such as the Secretary of Interior and his designees, the administrative flexibility to tailor allowances to the availability of funds. That decision contravenes neither the language nor the purpose of the Act. Secretary Watt clearly

- - - - - - - - - -

[34] 5 U.S.C. § 5922.

[35] 5 U.S.C. § 5922(c)(1) states:

> The allowances and differentials authorized by this subchapter shall be paid under regulations prescribed by the President governing -
>
> (1) payments of the allowances and differentials and the respective rates at which the payments are made.

possessed the authority which he delegated to the High Commissioner. His power to delegate flowed from the regulations and 5 U.S.C. § 302(b)(1).[36] Since no material issues remain concerning plaintiff's allegations against him, Watt is entitled to summary judgment.

## IV. DEFENDANT HIGH COMMISSIONER'S MOTION TO DISMISS

Although the High Commissioner seeks dismissal under Rule 12(b)(6) for failure to state a claim, the substance of her motion also contests subject matter jurisdiction. A 12(b)(6) dismissal determines only that as a technical matter the complaint insufficiently frames a cause of action which otherwise, with more complete pleading, would be cognizable; it does not rule that the court lacks authority under all circumstances to adjudicate the type of cause presented. See, e.g., Wheedlin v. Wheeler, 373 U.S. 647, 649, 10 L.Ed.2d 605, 83 S.Ct. 1441, 1443-1444 (1963); Congress of Racial Equality v. Clemmons, 323 F.2d 54, 59 (5th Cir. 1963), cert. denied 375 U.S. 992, 11 L.Ed.2d 478, 84 S.Ct. 632 (1964). An objection to the court's general adjudicative authority is a challenge to its subject matter jurisdiction. 5 Wright & Miller § 1350 at 543.

The High Commissioner essentially questions the Court's authority to decide this type of case. She contends that her actions are generally unreviewable under the APA or 42 U.S.C. § 1983. Because one of plaintiff's theories relies upon the

- - - - - - - - - -

[36] 5 U.S.C. § 302(b)(1) provides:

> In addition to authority to delegate conferred by other law, the head of an agency may delegate to subordinate officials the authority vested . . .
>
> > 1. by law to take final action on matters pertaining to the employment, direction, and general administration of personnel under his agency . . .

The State Department Standardized Regulations § 040e acknowledge this statutory power by defining "head of agency" to include designees of executive branch heads. Note 32, supra.

Tucker Act, she further submits that the proper forum is the Court of Claims and that the proper defendant is the United States.

The Court accordingly treats the High Commissioner's motion as: (1) a Rule 12(b)(1) dismissal motion for lack of subject matter jurisdiction; and (2) an alternative 12(b)(6) motion, which the Court's consideration of extra-pleading material converts into a summary judgment motion.[37]

### A. Subject-Matter Jurisdiction

Employing the review standard applied to the United States' 12(b)(1) motion,[38] the Court initially addresses the issue of subject matter jurisdiction. This approach is necessary even though the analysis and disposition of Secretary Watt's motion seem to also support summary judgment for the High Commissioner. If the Court lacks jurisdiction, it has no power to enter judgment and may only dismiss. <u>Dassinger v. S. Cent. Bell Tel. Co.</u>, 505 F.2d 672, 674 (5th Cir. 1974) (per curiam); <u>see</u> 10 Wright & Miller § 2713 at 404-405.

Plaintiff may not sue the High Commissioner under the Tucker Act or the APA. The only proper defendant in a Tucker Act suit is the United States. <u>See</u> <u>Dema v. Fedor</u>, 470 F.Supp. 15a, 155 (N.D. Ill. 1979); <u>cf.</u> <u>Morris v. U.S.</u>, 521 F.2d 872, 875 (9th Cir. 1975) (Federal Tort Claims Act grants jurisdiction to sue only the United States). High Commissioner actions are also immune from APA review under the APA's exemption for actions by the governments of United States territories or possessions. <u>People of Saipan v. U.S. Department of Interior</u>, 356 F.Supp. 645, 657-658, <u>aff'd as modified on other grounds</u> 502 F.2d 90, 95-96 (9th Cir. 1974), <u>cert. denied</u>

- - - - - - - - - -

[37]Page 14, <u>supra</u>.

[38]Page 5, <u>supra</u>.

420 U.S. 1003, 43 L.Ed.2d 761, 95 S.Ct. 1445 (1975).[39]

█ In order to determine the availability of 42 U.S.C. § 1983,[40] it is first necessary to ascertain whether the High Commissioner acted under color of federal law or territorial law. Section 1983 is not a remedy against action under color of federal law. Askew v. Bloemker, 548 F.2d 673, 677 (7th Cir. 1976); see Davis v. Passman, 442 U.S. 228, 238 n. 16, 60 L.Ed.2d 846, 99 S.Ct. 2264, 2272 N. 16 (1979).

- - - - - -

[39]Plaintiff accurately observes that the High Commissioner is both an Interior Department official and a territorial chief executive. He argues that therefore People of Saipan exempts review only of bona fide "local" actions performed as a territorial chief executive. Although the language of the Ninth Circuit's opinion would appear to leave room for this argument, a careful reading of that decision and the lower court's opinion forecloses such an interpretation. The trial court found that the High Commissioner and his immediate subordinates constitute a component of the Department of Interior. People of Saipan v. U.S. Department of Interior, 356 F.Supp. 645, 651 n. 13, 657 (D. Haw. 1973). Nonetheless, it concluded that the APA exclusion applies without a federal-local functional distinction because the individuals are federal officers heading the government of a United States territory or possession within the spirit of the exemption. Id. at 657-658. The Ninth Circuit did not reiterate this holding verbatim, but it clearly affirmed it by specifically referring to the appropriate pages of the lower court's decision. Id., 502 F.2d 90, 94-95 (9th Cir. 1974).

[40]42 U.S.C. § 1983 states in pertinent section:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ The nature of the High Commissioner's responsibilities and the Trust Territory government[41] make the "color of law" inquiry especially critical here. The High Commissioner is a United States official operating in a dual capacity as a Department of Interior officer and as a territorial chief executive. 356 F.Supp. at 651 n. 13, 657, aff'd 502 F.2d at 95. As the Trust Territory High Court has recognized, the Trust Territory government in general is similarly both a part of the Department of Interior and a local governmental entity. Alig v. Trust Territory, 3 T.T.R. 64, 67 (H.C.Tr.Div. 1965), aff'd 3 T.T.R. 603, 612-613 (H.C.App.Div. 1967).

■ Under Ninth Circuit law, color of law analysis focuses upon whose authority defendant exercised during the transaction in question. Tongol v. Usery, 601 F.2d 1091, 1097 (9th Cir. 1979). Action is taken under color of state or territorial law only if the power exercised is possessed by virtue of local law and made possible only because defendant is clothed with the authority of that law. Polk County v. Dodson, ____ U.S. ____, No. 80-824 slip op. at 5, (December 14, 1981); U.S. v. Classic, 313 U.S. 299, 326, 85 L.Ed. 1368, 61 S.Ct. 1031, 1043 (1941).[42] While federal statutory reservation of administrative authority to local government does not in itself warrant the authority's characterization as "federal", unlawful exercise of the authority is "under color of federal law" if it is action implementing a federal policy. Rowe v. State of Tennessee, 609 F.2d 259, 264-265 (6th Cir. 1979).

- - - - - - - - - - -

[41] See note 1, supra, and notes 45 and 49, infra. See generally Gale v. Andrus, 643 F.2d 826, 828-829 (D.C. Cir. 1980); McComish v. C.I.R., 580 F.2d 1323, 1328-1329 (9th Cir. 1978); Groves v. U.S., 533 F.2d 1376, 1378-1380, 1384 n. 13 (5th Cir. 1976), cert. denied 429 U.S. 1000, 50 L.Ed.2d 611, 97 S.Ct. 529 (1977); People of Saipan v. U.S. Department of Interior, 502 F.2d 90, 95-98 and n. 10 (9th Cir. 1974), cert. denied 420 U.S. 1003, 43 L.Ed.2d 761, 95 S.Ct. 1445 (1975); Sablan Construction Co. v. Trust Territory, DCA No. 809025 at 3-8, 10-12, ____ F.Supp. ____ (D.N.M.I. App.Div. Nov. 4, 1981); People of Enewatak v. Laird, 353 F.Supp. 811, 818-819, (D. Haw. 1973).

[42] See also Monroe v. Pape, 365 U.S. 163, 183-187, 5 L.Ed.2d 492, 81 S.Ct. 473, 482-484 (1961), overruled in part on other grounds Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 695-701, 56 L.Ed.2d 611, 98 S.Ct. 2018, 2038-2041 (1978); Screws v. U.S., 325 U.S. 91, 112-113, 89 L.Ed. 1495, 65 S.Ct. 1031, 1040-1041 (1945).

The Court concludes that the High Commissioner acted under color of federal law. The High Commissioner's determination of plaintiff's educational allowance implemented federal employee compensation policy under 5 U.S.C. § 5924(4)(A) and the State Department regulations. Moreover, the High Commissioner was empowered to make that determination by virtue of federal governmental authority. The administrative perogative to set allowances, like the allowance program itself, owed its existence solely to federal authority.

The Comptroller General's ruling against plaintiff[43] highlights the primarily federal nature of the power exerted. The decision stated that allowance-setting authority passed to the High Commissioner as a delegation from the Secretary of Interior under 5 U.S.C. § 302.[44] Matter of Carl Bauer, B-192267 at 3 (Comp.Gen. Sept. 10, 1980) (Exhibit I, Defendants Watt and United States' Opposition to Motion to Set Hearing, December 22, 1981). That statute provides for delegation to the Secretary's "subordinate officials" within the Interior Department. The decision justified plaintiff's receipt of lower allowances than those granted to Interior employees in other agencies on the ground that the Trust Territory is separately budgeted within Interior's Office of Territorial Affairs. Id. at 7. The Comptroller General implicitly assumed, as this Court expressly rules, that the High Commissioner's disallowance of plaintiff's claim for full educational expenses was action under color of federal law.[45] Therefore plaintiff may not employ § 1983 to challenge that action.

- - - - - - - - - -

[43]Note 6, supra.

[44]Note 36, supra,

[45]The Comptroller General has traditionally considered the Trust Territory government and those of other territories under United States jurisdiction, to be non-federal agencies for general purposes. See Comptroller General's Opinion B-1311569 (June 11, 1957) cited in McComish v. C.I.R., 580 F.2d 1323, 1330 (9th Cir. 1978) and Porter v. U.S., 496 F.2d 583, 589 (Ct.Cl. 1974) cert. denied 420 U.S. 1004, 43 L.Ed.2d 761, 95 S.Ct. 1446 (1975). Ninth Circuit precedent also treats the Trust Territory as a United States territory even though the area is technically not a

273

Although plaintiff may not proceed under § 1983, his complaint states a cognizable Bivens action under the United States Constitution. In Bivens v. Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 389, 29 L.Ed.2d 619, 91 S.Ct. 1999, 2001 (1971), the Supreme Court established that victims of Fourth Amendment violations by a federal officer may maintain a damages action in federal court. The court subsequently approved Bivens suits under the Fifth Amendment, one of the amendments allegedly violated here.[46] Davis v. Passman, 442 U.S. 228, 248-249, 60 L.Ed.2d 846, 99 S.Ct. 2264, 2278-2279 (1979). Because plaintiff alleges the violation of clearly protected constitutional rights which the judiciary primarily enforces, he frames a cause of action within this Court's general federal question jurisdiction. Id. at 236-244, 99 S.Ct. at 2272-2276. Jurisdiction extends to plaintiff's equitable claim as well as to his monetary claim. Bolling v. Sharpe, 347 U.S. 497, 98 L.Ed. 884, 74 S.Ct. 693 (1954), on further argument 349 U.S. 294, 300-301, 99 L.Ed. 1083, 75 S.Ct. 753, 756 (1955); Doe v. U.S. Civil Serv. Comm., 483 F.Supp. 539, 564 n. 22 (S.D. N.Y. 198); see 442 U.S. at 231 n. 4, 242-243 and n. 24, 99 S.Ct. at 2269 n. 4, 2275-2277 and n. 24.[47] Thompson v. Kleppe, 424 F.Supp. 1263, 1266-1269

- - - - - - - - - -

a territory because the United States governs as a United Nations trustee rather than as a de jure sovereign. People of Saipan v. U.S. Department of Interior, F.2d 90, 95 (9th Cir. 1974). Although there is an abstract theoretical distinction between the Trust Territory and conventional United States territories, in practical reality "this distinction is immaterial." Id.; accord, Thompson v. Kleppe, 424 F.Supp. 1263, 1267 (D. Haw. 1973).

[46]The lower federal courts have implied Bivens actions under the First, Sixth, Eighth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments. See Comment, Bivens and the Creation of a Cause of Action for Money Damages Arising Directly From the Due Process Clause, 29 Emory L.J. 231, 245-247, 257-261 (1980). In a recent Eighth Amendment case, the Supreme Court appears to have suggested that any constitutional violation will support a Bivens claim. See Carlson v. Green, 446 U.S. 14, 18, 64 L.Ed.2d 15, 100 S.Ct. 1468, 1472 (1980).

[47]But see Lehman, Bivens and Its Progeny: The Scope of a Constitutional Cause of Action for Torts Committed by Government Officials 4 Hastings Con. L.Q. 511, 561-565 (1977).

(D. Haw. 1976) has previously recognized the cognizability of <u>Bivens</u> suits against the High Commissioner and other federal officers in their official capacities.

The Court's concurrence in that ruling[48] does not end the jurisdictional analysis. The High Commissioner's status as a federal official acting under color of federal law raises an important issue which <u>Kleppe</u> did not address. That issue is whether the United States' sovereign immunity prevents the assumption of jurisdiction in an action against the High Commissioner in her official capacity.

Under the present state of the law, the United States' sovereign immunity[49] is not always a jurisdictional bar against such actions. Plaintiff may sue for specific relief if: (1) the disputed action was beyond the official's statutory powers (the ultra vires exception); or (2) the powers, although within the official's scope of authority, are unconstitutional themselves or unconstitutionally exercised (the constitutional exception). <u>Dugan v. Rank</u>, 372 U.S. 609, 621-622, 10 L.Ed. 15, 83 S.Ct. 999,

- - - - - - - - - -

[48]<u>Kleppe</u> also held that the Trust Territory is not a territory for purposes of 42 U.S.C. § 1983. Because this case involves action under color of federal law rather than territorial law, the Court expresses no view as to the correctness of that conclusion.

For two independent reasons, the Trust Territory's "qualified sovereignty" does not afford the High Commissioner any derivative immunity here. First, that amorphous legal status provides no immunity in United States courts against actions alleging violations of federal law. <u>People of Saipan v. U.S. Department of Interior</u>, 356 F.Supp. 645, 659, <u>aff'd as modified on other grounds</u> 502 F.2d 90 (9th Cir. 1974), <u>cert. denied</u> 420 U.S. 1003, 43 L.Ed.2d 761, 95 S.Ct. 1445 (1975). Second, Trust Territory governmental immunity is a judicially created common law concept. <u>See</u> <u>Alig v. Trust Territory</u>, 3 T.T.R. 603, 610-615 (1967). Under correlative common law doctrine, it supplies protection only in Trust Territory courts. <u>See, e.g.</u>, <u>Nevada v. Hall</u>, 441 U.S. 410, 414-416, 59 L.Ed.2d 416, 99 S.Ct. 1182, 1185-1186 (1979).

275

1007 (1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 701-702, 93 L.Ed. 1628, 69 S.Ct. 1457, 1467, reh. denied 338 U.S. 840, 94 L.Ed. 514, 70 S.Ct. 31 (1949). This case implicates the constitutional exception.

The Supreme Court originally developed these principles to ease the "Procrustean task" of harmonizing its prior decisions. Malone v. Bowdoin, 369 U.S. 643, 646, 8 L.Ed.2d 168, 82 S.Ct. 980, 983 (1962). Justice Douglas presciently fore-warned that characterization of the court's sovereign immunity decisions as irreconcilable "will doubtless be true if said by those who sit here several decades hence." Id. at 650, 82 S.Ct. at 985 (Douglas, dissenting). The Ninth Circuit recently lamented, and this Court agrees, that "the contours of the doctrine of sovereign immunity are far from clear" and that the precedents are now "hopelessly inconsistent." Beller v. Middendorf, 632 F.2d 788, 796-797 (1980), reh. denied sub nom. Miller v. Rumsfeld, 647 F.2d 80 (9th Cir. 1981), cert. denied sub nom. Beller v. Lehman, _____ U.S. _____, 69 L.Ed.2d 405, 101 S.Ct. 3030 (1981).

Larson's footnote eleven is primarily responsible for the confusion[50]:

- - - - - - -

[50]See, e.g., Beller v. Middendorf, 632 F.2d 788, 796-799 (1980), reh. denied sub nom. Miller v. Rumsfeld, 647 F.2d 80 (9th Cir. 1981), cert. denied sub nom. Beller v. Lehman, _____ U.S. _____, 69 L.Ed.2d 405, 101 S.Ct. 3030 (1981); Westside Property Owners v. Schlesinger, 597 F.2d 1214, 1219 (1979); Glines v. Wade, 586 F.2d 675, 681 (9th Cir. 1978), rev'd on other grounds sub nom. Brown v. Glines, 444 U.S. 348, 62 L.Ed.2d 540, 100 S.Ct. 594 (1980); Martinez v. Marshall, 573 F.2d 555, 560 (9th Cir. 1977); City of Santa Clara v. Andrus, 572 F.2d 660, 679 (1978); De Lao v. Califano, 560 F.2d 1384, 1390-1391 (9th Cir. 1977); Abrams v. Hills, 547 F.2d 1062, 1070 (9th Cir. 1976); Knight v. N.Y., 443 F.2d 415, 420 (2d Cir. 1971); State of Washington v. Udall, 417 F.2d 1310, 1316-1319 (9th Cir. 1969); Turner v. Kings River Conserve Dist., 360 F.2d 184, 189-190 (9th Cir. 1966); West Coast Exploration Co. v. McKay. 213 F.2d 582, 596 (D.C. Cir. 1954), cert. denied 347 U.S. 989, 98 L.Ed. 1123, 74 S.Ct. 850 (1954); U.S. v. Various Articles of Obscene Merchandise, 514 F.Supp. 463, 467-472 (S.D. N.Y. 1981), Doe v. U.S. Civil Serv. Comm., 483 F.Supp. 539, 560-563 and n. 10 (S.D. N.Y. 1980); Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L.Rev. 1, 29-39 (1963).

276

> (A) suit may fail, as one against the
> sovereign, even if it is claimed that the
> officer being sued has acted unconstitutionally
> or beyond his statutory powers, if the relief
> requested cannot be granted by merely ordering
> the cessation of the conduct complained of but
> will require affirmative action by the sovereign
> of the disposition of unquestionably sovereign
> property (emphasis added).

337 U.S. at 691, 69 S.Ct. at 1462. After analyzing the case which Larson cited as authority for the footnote, one commentator suggested that this "exception to the exception" potentially defeats only mandamous relief. See Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L.Rev. 1, 34 (1963). The Supreme Court's post-Larson reiteration and application of the immunity exceptions has conspicuously abandoned the footnote. See, e.g., Hampton v. Mow Sun Wong, 426 U.S. 88, 93 n. 5, 48 L.Ed.2d 495, 96 S.Ct. 1895 n. 5 (1976);[51] Dugan, 372 U.S. at 621-622, 83 S.Ct. at 1007 (1963); Malone, 369 U.S. at 648, 82 S.Ct. at 983. Some courts have therefore concluded that the more recent formulations without the footnote control. E.g., Doe v. U.S. Civil Serv. Comm. 483 F.Supp. 539, 561 n. 18 (S.D. N.Y. 1980).

The Ninth Circuit construes the footnote to permit the exercise of jurisdiction but to bar relief "if the relief would work an intolerable burden on the government which outweighs any considerations of private harm."[52] De Lao v. Califano, 560 F.2d 1384, 1391 (9th Cir. 1977); Washington v. Udall, 417 F.2d 1310, 1318 (9th Cir. 1969). Although under present circuit law sovereign immunity is not a jursidictional bar, the cases

- - - - - - - - - -

[51] Hampton did not specifically recite the Dugan-Larson immunity doctrine and its exceptions. It noted with apparent approval the district courts express reliance upon both exceptions.

[52] In the context of another Bivens action, the Supreme Court explained the analytical distinction between jurisdiction and relief. "Jurisdiction is a question of whether a federal court has the power, under the Constitution or laws of the United States, to hear a case . . . relief is a question of the various remedies a federal court may make available." Davis v. Passman, 442 U.S. 228, 239 n. 18, 60 L.Ed.2d 846, 99 S.Ct. 2264, 2274 n. 18 (1979).

contain tortuous pronouncements concerning the forms of
"specific relief"[53] recoverable under this balancing test.
Because the Court grants summary judgment for the High Commis-
sioner on other grounds,[54] it is fortuitously unnecessary to
apply those guidelines.

Based upon the considerations discussed above, the Court
concludes that it has subject matter jurisdiction. The High
Commissioner's motion to dismiss is denied.

B. Summary Judgment

Under the governing review standard[55] the issue is whether
any genuine material factual questions remain. Plaintiff asserts

- - - - -.- - - - -

[53]Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682,
688, 93 L.Ed. 1628, 69 S.Ct. 1457, 1460 (1949) defined
"specific relief" as "the recovery of specific property
or monies, ejectment from land, or injunction directing
or restraining the defendant officer's actions" (emphasis
added). Although this formulation would seem to allow
monetary awards, Ninth Circuit decisions present incon-
sistent views on the availability of such relief. See
generally the Ninth Circuit cases cited in note 50, supra.
Beller v. Middendorf, 632 F.2d 788, 798 n. 5 (1980), reh.
denied sub nom. Miller v. Rumsfeld 647 F.2d 80 (9th Cir.
1981), cert. denied sub nom. Beller v. Lehman, ____ U.S.
____, 69 L.Ed.2d 405, 101 S.Ct. 3030 (1981), questioned
in dictum, but expressly declined to definitively resolve,
the propriety of Bivens actions for monetary relief against
federal officers in their official capacities. It explicitly
recognized that sovereign immunity principles, as embodied in
the presently binding Ninth Circuit construction of Larson
and Dugan, do not bar all actions in which recovery will come
from the public treasury. Id. Under that construction,
sovereign immunity does not bar actions such as this one
in which plaintiff alleges constitutional violations.
Harsbrouck v. Texaco, Inc., 663 F.2d 930, 933 (9th Cir.
1981), unambiguously and emphatically admonished district
courts to apply circuit law as it currently exists, not as
it may be in the future after appellate en banc re-examination.
The Court's decision here complies with that directive.

[54]For the same reason, the Court does not reach non-jurisdictional
Bivens issues concerning the appropriateness of damages relief.
See Carlson v. Green, 446 U.S. 14, 18-20, 64 L.Ed.2d 15, 100
S.Ct. 1468 (1980); Davis v. Passman, 442 U.S. 228, 244-248,
60 L.Ed.2d 846, 99 S.Ct. 2264, 2276-2279 (1979).

[55]See page 14, supra.

a property interest entitlement to educational allowances under 5 U.S.C. § 5924(4)(A) which fully reimburse his expenses. He alleges the deprivation of that entitlement in violation of the United States Constitution's due process guarantees. The facts amply refute that claim and compel summary judgment for the High Commissioner.

To have a due process property interest in a government benefit one must have a legitimate claim of entitlement to it. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 572, 33 L.Ed.2d 548, 92 S.Ct. 2701, 2709(1972); Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1098 (9th Cir. 1981). A legitimate claim is one which is something more than either an abstract need for the benefit or a unilateral expectation of it. Roth, id.

Neither the statute nor the State Department's implementary regulations mandate the payment of either full educational expenses or a specific minimum allowance.[56] Plaintiff's claim to those levels of benefits is a unilateral expectation which does not amount to a constitutionally protected property interest. In language consistent with the statute, the regulations permit agency heads or their designees to pay allowances at rates lower than the State Department maximum rate when funds are insufficient.[57] Secretary Watt possessed this authority.[58] Pursuant to the regulations and 5 U.S.C. § 302(b)(1)[59] he delegated the authority to the High Commissioner.[60] In disallowing part

- - - - - - - - -

[56]Pages 16-18, supra.

[57]Pages 16-17 and note 32, supra.

[58]Page 18, supra.

[59]Page 18, supra.

[60]Note 5, supra.

of plaintiff's claim due to budgetary constraints, the High Commissioner acted constitutionally and within the authority granted by the statute and regulations. Because no material dispute on these issues exists, the Court grants summary judgment for the High Commissioner.

The Court DENIES the High Commissioner's motion to dismiss for lack of subject matter jurisdiction. It GRANTS the United States' motion to dismiss for lack of subject matter jurisdiction and the summary judgment motions of Secretary Watt and the High Commissioner. It shall enter an appropriate ORDER.

DATED: Jan. 22, 1982

ALFRED LAURETA
United States District Judge